NANCY SULLIVAN, Appellant, *v.* MARIA R. FERGUSON, CHAS. R. FERGUSON, HENRY H. FERGUSON, JOSEPH PATTERSON, ADM'R OF JOHN H. FERGUSON, DEC'D, AND LEICESTER BABCOCK, ADM'R OF ANDREW DICKSON, DEC'D, Respondents.

1. *Conveyance — Contract — Description — Quantity— Consideration.*—Where land is sold at a given price per acre for the aggregate quantity contained in the tract, specified at a certain number of acres more or less, no provision being made for a survey to ascertain the precise quantity to fix the amount to be paid, the price and number of acres are to be taken as showing the amount to be paid.

2. *Vendors and Purchasers—Lien— Waiver.*—Where the vendor sells land and takes collateral security for the purchase money, he will be considered as waiving his lien upon the land conveyed.

*Appeal from St. Louis Land Court.*

This was a suit in equity by Nancy Sullivan to establish a debt against the estate of Andrew Dickson, deceased, and fix it as a lien on a tract of land owned by the widow and heirs at law of John H. Ferguson, deceased.

The petition stated substantially, that on the 9th of May, 1853, said Nancy Sullivan was the owner of a tract of land in St. Ferdinand township, bounded north by the Missouri river, east by the Mill tract and Laban Landen (now or formerly), south by Richard Bland, west by Henry W. Carter, and being the same tract on which Daniel Sullivan resided in his lifetime, containing one hundred arpents more or less, being a portion of survey 1960, confirmed to Morris James under Charles Desjarles, and the same tract of land acquired by said plaintiff of the heirs of Margaret Blair, who died seized of the same, having acquired the same at public sale under foreclosure of mortgage given by said Daniel Sullivan to Samuel W. Harwood, February 13, 1837; that on the same day said Nancy sold, by writing, said tract of land to Andrew Dickson. This contract recites that said Nancy had sold and conveyed by good and sufficient deed to Andrew Dickson, describing it substantially as above; that the title was defective by reason of small outstanding interests

and irregular conveyances; that parties desired to remedy said defects; that Dickson on receiving his deed should pay her $800; that Dickson should have the land sold by proceedings in partition in court with a view of procuring outstanding claims and remedying defects, or, if advisable, to do any and all acts and things in and about the business of making the title perfect, and for that purpose employ attorneys, &c.; Dickson to advance all moneys necessary, and all costs, expenses and moneys so advanced to be considered part of the consideration money to be paid by Dickson and deducted from what should be due to her for the land; said Dickson, after deducting all such costs and expenses and the $800, to pay the residue coming to her as follows: one-half to be paid at the end of six months from perfecting title, and the other half one year thereafter, or eighteen months from perfecting title; all moneys paid to outstanding claimants, or to the sheriff or other officer, in partition for them, to be deducted as expenses; should partition be made in kind, Dickson to pay only for the land set apart to him as said Nancy's assignee; interest at six per cent. per annum to be allowed on deferred payments.

At the foot of the above agreement was a covenant by L. Babcock, in consideration of five dollars by said Nancy, that Andrew Dickson should faithfully keep and perform his part of the contract; that said Nancy conveyed the land immediately to Dickson, who took possession and paid the $800; that on 21st October, 1854, Dickson commenced suit in partition against Polly Dozier and others; pending this partition suit Andrew Dickson conveyed the land to Alonzo Dickson August 5, 1855, who on November 10, 1855, conveyed the same to Fannie A. Dickson; that there was no valuable consideration for either of said last mentioned deeds.

In October, 1856, an order of sale was made in the partition suit; on December 1, 1856, the sheriff made the sale, and John H. Ferguson was the purchaser for $4,000, and received the sheriff's deed, and took and had possession till his death November 21, 1863. That by agreement between

Nancy Sullivan, Fannie A. Dickson, and John H. Ferguson, he (Ferguson) bought said land for his daughter Fannie A. Dickson; on this purchase Ferguson paid in cash $1,333.33, and gave two notes and a deed of trust to secure the residue of the $4,000, for $1,333.33 each. All the defendants in the partition suit were ordered to come and claim their shares; no one came but Angus Langham, and the shares of the other defendants were adjudged to belong to the assignee of the plaintiff; that John H. Ferguson withdrew from the sheriff the cash payment, and never paid the two notes of $1,333.33, and he only paid the costs and the sum due Angus Langham; that Fannie A. Dickson, as the representative of all parties in the partition suit save Angus Langham, receipted to the sheriff for the cash payment, and the notes aforesaid, as if her father had paid them; that by an agreement between John H. Ferguson, Fannie A. Dickson, and said Nancy, John H. Ferguson agreed to take said land as his own, and pay said Nancy the balance due her for the purchase money; that, at the instance and request of said Ferguson and Nancy, the tract of land was surveyed in 1853 by three competent surveyors, viz., Cozens, Woods and Wyatt, and found to contain $159\frac{55}{100}$ acres of land, said survey being had for the sole purpose of ascertaining the amount due said Nancy; that immediately after, a settlement was had between said Nancy and Ferguson, all credits being allowed to said Ferguson, to his entire satisfaction; that Ferguson paid $1,339.95 October 14, 1858, and paid on January 12, 1860, $400 more; that the costs of the partition suit were $364.85, expenses of surveys $89, and the amount paid Angus Langham $154.70—all which are credits on the contract; that the said deed and agreement vested a perfect title in Ferguson, and he knew said Nancy had not been paid; that Maria R. Ferguson is the widow of J. H. Ferguson, deceased—the other defendants, save Patterson, are his children; that on January 16, 1864, the children conveyed the land to their mother Maria; that the deed was without valuable or adequate consideration; that all the other defendants had no-

tice; that Patterson is administrator of Ferguson, and Babcock is the administrator of Dickson; that $1,033.68 is due plaintiff.

The plaintiff prayed for a judgment for her debt as claimed, and that it be enforced on the land of the widow of Ferguson.

The answer denied that said Nancy ever owned the whole land, and insisted that she sold the whole tract by metes and bounds as 100 arpents more or less; that she sold to Andrew Dickson land which she did not own, and required him by the contract to pass away the title to other persons, and agreed to receive from him pay for what she should appear to own at the end of the suit to be brought; that at her instance said Andrew brought the suit in partition, and by said suit it was adjudged that said Nancy owned of the said 100 arpents only $63\frac{83}{100}$ arpents; that Polly Dozier owned $14\frac{29}{100}$ arpents; that Angus Langham owned $5\frac{80}{100}$ arpents; that the unknown heirs of Fielding Laird owned $14\frac{29}{100}$ arpents, and Giles Sullivan $1\frac{78}{100}$ arpents; that by the said articles of agreement between said Nancy and Andrew Dickson the quantity in the tract was fixed at 100 arpents; that the deed to Andrew Dickson fixed the quantity at 100 arpents; that by the conveyance of Andrew to Alonzo Dickson and by Alonzo Dickson to Fannie A. Dickson, she became the owner of all the interest which her husband Andrew had obtained, and was entitled to all moneys coming to him from the partition sale; that John H. Ferguson bought the land for $4,000 at the sheriff's sale and paid for it at that price; that he bought said land for himself, not for Fannie—that she never paid any part of the purchase money; that the defendants had no knowledge or information as to any order of the court to pay all the partition moneys to said Fannie—they deny that Ferguson agreed with said Fannie and Nancy to take the land as his own, or that he agreed to pay said Nancy, and set up the statute of frauds and acts of limitation against all alleged oral agreements; that the moneys paid by said Ferguson were paid by request of Fannie A. Dickson

and in part of his bid of $4,000 ; that it is true said Ferguson gave Fannie Dickson his note for some surplus land over the 100 arpents, which notes also embraced some portion of the personal estate of Andrew Dickson ; they denied that any portion of the purchase money remained due said Nancy on her contract of sale, and alleged that Nancy Sullivan is a rebel enemy of the United States.

The appellant read in evidence the contract between Nancy Sullivan and Andrew Dickson, dated May 9, 1853 ; the deed of Nancy Sullivan to Andrew Dickson, dated May 6, 1852, describing the land as containing 100 arpents more or less ; power of attorney from Andrew Dickson and wife to L. Babcock, dated July 18, 1855 ; deed of Andrew Dickson and wife to Alonzo Dickson, dated August 3, 1855 ; deed from Alonzo Dickson to Fannie A. Dickson, dated November 18, 1855 ; deed of sheriff to John H. Ferguson, on sale in partition, dated October 23, 1856 ; the record of the suit in partition of Andrew Dickson v. Polly Dozier, Angus Langham and others — commenced in December, 1854 ; Redmond's receipt for $400 for Mrs. Sullivan, dated January 12, 1860.

The plaintiff offered to read in evidence the record of a suit, " Fannie A. Dickson v. The unknown heirs of Fielding Laird and others," which on motion of defendants the court excluded.

Also plaintiff offered the following oral testimony :

Charles Bray stated he heard John H. Ferguson say on the day of the sheriff's sale, he wanted to buy for the widow as cheap as possible, and was buying for his daughter and her two children.

P. C. Morehead states that he and Babcock and Redmond were present at a settlement for the land, and produced a paper which he said was the settlement ; on this paper was a balance struck of $1,033.68 ; that Ferguson furnished the survey, and assented to the first item of the account making due to Nancy Sullivan, as the whole piece of land sold And'w Dickson, $3,669.65 ; that Ferguson promised to pay the

amount then due for the land to Mrs. Sullivan, but whatever he (Ferguson) so paid was to be deducted out of the $4,000 he bid for the land, and Ferguson gave her a note for the balance due her; he (Morehead) looked to Ferguson to pay, because he bought the land;—no, he was mistaken; after paying Mrs. Sullivan, if anything remained, that was to go to Fannie Dickson.

Leicester Babcock testified that Ferguson bought for his daughter; the agreement was to sell the land at *private* sale, and whatever was left after paying Mrs. Sullivan was to go to Fannie; Ferguson got the cash and notes from the sheriff, except costs, expenses, commissions, &c.; the notes were cancelled. Ferguson held the land solely for his daughter. Mrs. Dickson agreed that her father might take the land— first pay Mrs. Sullivan, then pay Fannie $17 per acre for 100 acres additional; the settlement was on this basis, October 14, 1858—*all* understood it. Ferguson agreed to pay plaintiff for $159\frac{55}{100}$ acres at $23 per acre—Mrs. Dickson $17 additional for 100 arpents or acres, giving $40 per acre for 100 arpents or acres, and then paid down $1,339.75, and gave Fannie his note; afterwards Ferguson paid $400, and that was all he ever paid on account of the land.

Cross-examined.—Q. "Are you certain Ferguson paid no more than you have stated for the land?" A. "I am." Defendants' counsel here showed the witness a note of Andrew Dickson for $1,000, dated Mar. 20, 1855, and a check in favor of the witness for $1,309, note drawing seven per cent., and asked witness what he knew about said papers. A. "I recollect now Ferguson was also to pay, and did pay, a deed of trust that Mrs. Cleveland had on the land. This is the note for the debt and the check to me in payment of it. Yes, I know Ferguson paid this debt to Mrs. Cleveland. My recollection is, the payment was allowed to Mr. Ferguson in his settlement with Fannie. Ferguson well knew of this deed of trust at time of settlement, and took it with full knowledge. The $47.56 was repaid to me." Q. "Why did you not mention this payment to Mrs. Cleveland before?" The

witness admitted he copied the petition when this suit was brought, and did not remember it then.

Redmond testified to being present at the settlement, and to Ferguson's promise to pay Mrs. Sullivan.

Fannie A. Dickson, who received all her husband's assets through deeds prepared by Mr. Babcock, and who should pay her husband's debts, corroborated the statement of Babcock about the $17 per acre.

The defendants then read in evidence the deed of trust to secure the purchase money to the sheriff; also produced and read the cancelled notes, each for $1,333.33; also read the note produced by Mrs. Dickson for $1,287.24, given by her father to her October 14, 1858, and sundry receipts thereon from her father.

*Cline & Jamison,* for appellant.

I. The parol agreement of John H. Ferguson to pay the balance of the purchase money to appellant is not within the statute of frauds, and the appellant was entitled to judgment for said balance against the estate of said John H. Ferguson. The legal and equitable title in and to said land being vested in said Ferguson and possession delivered to him, he ought legally and equitably to pay for the same—Sug. on Vend. 401; Rose v. Bates, 12 Mo. 30 & 51; Bean v. Vallé, 2 Mo. 126; Halsa v. Halsa, 8 Mo. 303; Doan v. Newman, 10 Mo. 69. Where a verbal contract is completely executed by one party, the consideration can be recovered from the other notwithstanding the statute of frauds. As, for instance, when a deed for land is given in pursuance of the contract, an action lies to recover the price—Browne on Stat. Fr. (2d ed.) p. 119, § 117.

II. The appellant had a vendor's lien upon the land for the balance of the purchase money due her.

John H. Ferguson not only knew that the whole of the purchase money had not been paid, but promised, in consideration of the legal and equitable title in and to the said land being vested in him, to pay the balance of the purchase

money to the appellant—Johnson v. Scott, 34 Mo. 129 ; De-lassus v. Poston, 19 Mo. 425 ; McDonald v. Hulse, 16 Mo. 503.

III. Neither of the contracting parties knew the quantity of land, it being the remainder of a larger tract. The contract ought to be construed and enforced according to the intention of the parties, and the acts of the parties under said contract are evidence of that intention. John H. Ferguson paid appellant a much larger amount than would be due her for 100 arpents, all of which acts are conclusive evidence that the contract should be construed as a sale of the land by the acre—French v. Corburt, 1 Comst. (N. Y.) 96 ; Clark v. Wilbey, 19 Wend. 320 ; Stone v. Clark, 1 Metc. 378.

IV. Appellant, and those under whom she claims, having had thirty-five consecutive years' adverse possession of the land prior to the sale to Andrew Dickson, gave her an absolute title to the land (Biddle v. Mellen, 13 Mo. 335), which possession was delivered by appellant to Dickson, and by him to John H. Ferguson, and now held by his widow, children and administrator, they are estopped from gainsaying that they have not the title under said appellant—Lindell v. McLaughlin, 30 Mo. 28.

V. The mere fact that appellant took L. Babcock's guaranty that Andrew Dickson would perform his part of said contract is not a waiver of her vendor's lien, especially as John H. Ferguson promised, in consideration of the legal and equitable title in and to said land being vested in him, to pay her the balance of the purchase money due her for said land, and appellant looked to him for payment—Johnson v. Scott, 34 Mo. 129 ; Delassus v. Poston, 19 Mo. 425 ; McDonald v. Hulse, 16 Mo. 503.

*Glover & Shepley*, for respondents.

I. The question of lien or not in favor of Nancy Sullivan against the land sold by her to Andrew Dickson will depend on the nature of the contract which she made with said Dickson, and cannot be affected by any subsequent events.

No oral agreements of any sort, or among any persons whatever, can have the slightest bearing on the question. The oral agreements between Ferguson and Fannie Dickson and Nancy Sullivan, if really proved, are void under the statute of frauds; and immaterial if not void, so far as supposed to create a lien on the land. If there was a lien, it existed at the date of the contract of sale to Dickson, or not at all. No money being paid to Fannie Dickson, no use or benefit accrues to such party—11 Mo. 506.

II. The contract of sale by Nancy Sullivan to Andrew Dickson created no lien in her favor.

No lien was pretended to be reserved by her; because, 1. In the contract between Sullivan and Dickson of May 9, 1853, she requires "Dickson to proceed with all due diligence and dispatch to have the said farm sold in partition" to some third person. It was therefore at her instance the land was conveyed to Ferguson. This was a release of any lien she might otherwise have. In the same agreement, A. Dickson is authorized to make the "title perfect" by a sale; perfect, of course, in the vendee, for it could be perfect in no other person. This is an abandonment of the vendor's lien. The vendor has a lien "when there is no contract that the lien by implication was not intended to be reserved"—Garson v. Green et al., 1 J. Ch. R. 309. Here, the implication that the lien was not intended to be reserved arises on the authority given to Dickson to sell and convey the land prior to the time fixed for paying the purchase money, and on the express provision that all moneys arising on the land not belonging to Sullivan should be credited on the contract. Where land was sold and it appeared that the agreement of the vendor contemplated a sale of the land by the vendee prior to the payment of the purchase money, the lien was considered waived—4 Wheat. 290-4; 4 Curt. Cond. U. S. 404. 2. But there is no lien, because the security of the name of a third person was taken at the time of conveying the land to Dickson, that he should pay the purchase money—4 Kent, 153-4; Gilman v. Brown et al., 1 Mason, 192; Gilman v. Brown, 4

Wheat. 255; Williams v. Roberts, 5 Ham. 35; Eckridge v. McClure, 2 Yerg. 84; Delassus v. Poston, 19 Mo. 429; Johnson v. Scott et al., 34 Mo. 129; Adams v. Cowherd, 30 Mo. 460.

III. But at the commencement of this suit there was nothing due to Nancy Sullivan on her contract of sale to Andrew Dickson, if a lien had been reserved.

The land was sold to A. Dickson by metes and bounds estimated in quantity at 100 arpents more or less, for the price and consideration of $23 per acre.—Boar v. McCormick et al., 1 S. & R. 166; Fleet v. Hawkins, 6 Munf. 190.

There is no vagueness or uncertainty as to the boundary of the land sold and conveyed. The conveyance of a specific lot, as No. 78 in New York, is a conveyance by metes and bounds; and when such a lot is conveyed as containing "600 acres more or less," although on a survey the quantity really is only $421\frac{1}{8}$ acres, there is no relief—Mann et al. v. Pearson, 2 J. R. 37–9; Smith v. Evans, 6 Binn. 106; Boxley v. Stevens, 31 Mo. 201; Large v. Penn, 6 S. & R. 488; Powell v. Clark, 5 Mass. 355.

HOLMES, Judge, delivered the opinion of the court.

The contract between the plaintiff and Andrew Dickson for the sale of the land to him, and the deed that was made to him as well as the subsequent conveyances, evidently contemplated that the tract of land sold contained about the quantity of one hundred arpents; that there were tenants in common who might be entitled to undivided shares with the plaintiff in the land; and that Dickson, the purchaser, should proceed to have a partition made by suit for the purpose of settling the respective rights of the parties in the premises and ascertaining her definite share; and that the title was fully conveyed to him by deed with a view to enable him by means of a partition sale to pass the whole title to the property to the purchaser at such sale, in case the sale of the land should become necessary. It was expressly stipulated in the contract of sale that if the land should be actually divided

and the shares set off by metes and bounds, the quantity so set off to her vendee as his share should govern in settling the amount as paid to her at the rate of twenty-three dollars per acre. The partition that was made ascertained his share to be some sixty-three and $\frac{83}{100}$ arpents. It was thus contemplated that her quantity might be less than the supposed content of the whole tract. It was not stipulated nor contemplated in the contract that a survey should be made for the purpose of ascertaining the exact number of acres contained in the whole tract sold, with reference to the amount of purchase money that was to be paid her. At the same time the plaintiff takes the written guaranty of a third responsible party for the faithful fulfilment of the contract and engagement of the vendee with her. The consideration expressed in the deed is large enough to cover the whole amount that would be due the vendor on the basis of her share being nearly equal to the whole tract; and it appears that she has been actually paid a larger amount than would be due to her on this basis. But it appears by accurate survey, subsequently made, that the tract really contained 149 acres.

The case comes within the principle, which must be considered as settled by this court, that where land is sold at a given price per acre for the aggregate quantity contained in the tract, specified at a certain number of acres "more or less," and no provision is made for a survey to ascertain the precise quantity for the purpose of fixing the amount to be paid, and both parties contemplate the aggregate limit named at which one is willing to sell and the other to buy, the price and the number of acres mentioned are to be taken as showing the amount of money to be paid, and the words "*more or less*" are not to unsettle this amount, and to leave the matter open to surveys, but are to be understood as indicating the agreement of each party to risk a variation in the quantity assumed—Boxley v. Stevens, 31 Mo. ~~107.~~ 201

The variation here is very great, and we might have some difficulty in applying this rule to a case of this kind if the

determination of the case depended upon this alone, though we are unable to find any other ground of distinction.

But it seems to be settled that where the land is conveyed by deed and with a view to an absolute sale of the property by the vendee to other persons, and to enable him to make a full title to the purchasers, and the vendor takes any other security for the purchase money, though only the personal security of a responsible person, the vendor's lien is to be considered as waived by the agreement and consent of the party. The security here guaranties the performance of the contract. It is laid down as the English rule that if a security be taken of a character and value which show that credit was exclusively given to that security, that fact is held to be entitled to much weight, though not conclusive in itself, and it still remains a question of intention to be collected from the circumstances which have taken place—Adams' Eq. 129. In the case of Brown v. Gilman, 4 Wheat. 290, where the circumstances were in many respects similar to this case, it was decided that an endorsed note was a collateral security, and discharged the lien of the vendor on the land itself for the purchase money. The same doctrine has been recognized by this court—Delassus v. Poston, 19 Mo. 425. If the matter stood here upon this guaranty alone, there might be some room for doubt as to the intention of the parties ; but when considered with reference to all the circumstances and the objects the parties had in view, we are inclined to the opinion that the case comes within the reasoning of the adjudged cases, and that the vendor's lien was waived—Gilman v. Brown, 1 Mason, 191 ; 2 Sto. Eq. Jur. § 1226, note 2 ; 4 Kent's Com. 153 ; Fish v. Howland, 1 Paige's Ch. 20.

The vendor's lien being gone, there remains no ground on which the plaintiff can be entitled to relief by subjecting the land to sale. The effect of the subsequent settlement between the plaintiff and John H. Ferguson on the question of the liability of his estate on that settlement, is not involved in the decision of this case, and we give no opinion concerning it.

Judgment affirmed. The other judges concur.