CHARLES W. STEVENS, Appellant, *v.* CHARLES C. RAIN-
WATER, Respondent.

June 26, 1877.

1. Where the note or other written obligation of a third person is taken by
   the vendor of real estate, he thereby waives his equitable lien.

2. Where a party makes certain representations which, in so far as they relate
   to matters of fact, are not false, the fact that his opinion, or judgment, or
   conclusions drawn therefrom, and stated as an inducement for another to
   contract with him, are untrue, will not avail to set aside the contract on
   the ground of fraudulent misrepresentations.

APPEAL from St. Louis Circuit Court.
*Affirmed.*

CHARLES E. PEARCE, for appellant: A vendor of land
conveyed by deed has a lien upon the land for the unpaid
consideration, against vendee and purchasers from him with
notice. — *McLean* v. *McLellan*, 10 Pet. 625 ; *Diebler* v.
*Boswick*, 4 Blackf. 339 ; *Watson* v. *Wells*, 5 Conn. 468 ;
*Garson* v. *Green*, 1 Johns. Ch. 308 ; *Bagley* v. *Green-
leaf*, 7 Wheat. 46, 50 ; *Davis* v. *Lamb*, 30 Mo. 441. The
taking in payment, by the vendor, of the note of a third
party, or other property, will not be a waiver of the lien,
if the vendor was induced to take such note or property by
the representations of the vendee, which were false, and such
taking would not constitute a payment. — *Skinner* v. *Pur-
nell*, 52 Mo. 96 ; *Pratt* v. *Clark*, 57 Mo. 189 ; *McDole* v.
*Purdy*, 23 Iowa, 278 ; *Bradley* v. *Bosley*, 1 Barb. Ch.
195 ; *Auburn* v. *Little*, 4 Thomp. & C. 259. If the
maker of the note taken be insolvent at the time of the
transfer, the lien will not be waived. *Christian* v. *Austin*,
36 Texas, 540 ; *Eddy* v. *Baldwin*, 32 Mo. 369 ; *Huffman* v.
*Hulbert*, 13 Wend. 377. If the representations, express
or implied, were false within the knowledge of the vendee,
and were reasonably relied on by the vendor, and consti-
tuted a material inducement to the conveyance, the act of
the vendee would be fraud. — *Tobey* v. *McAllister*, 9 Wis.

463; *Bacon* v. *Bronson*, 7 Johns. Ch. 199; Adams' Eq. 364, sec. 176.

C. P. ELLERBE and CAMPBELL & MELLEN, for respondent: The taking of the note of a third party is a waiver of the equitable lien. — *Pickard* v. *Banks*, 13 East, 20; *Gregory* v. *Mack*, 3 Hill, 383; 2 N. H. 335; 5 Pick. 44; 1 Dall. 337; *Cowl* v. *Barnum*, 37 Ill. 181; *Richards* v. *Laning*, 27 Ill. 137; *Brown* v. *Gilmore*, 4 Wheat. 225; *Chilton* v. *Branden*, 2 Black, 460; *Delassus* v. *Poston*, 19 Mo. 425; *Durette* v. *Briggs*, 49 Mo. 362; *Adams* v. *Buchanan*, 49 Mo. 67. Fraudulent representations. — Adams' Eq. 421, sec. 176.

HAYDEN, J., delivered the opinion of the court.

This is a suit to enforce a vendor's lien. The plaintiff charges that he sold the defendant certain real estate for $30,000, and that, of the purchase-money, $5,000 remains unpaid. The defendant denies that that amount remained unpaid, and alleges that in the deed of the property plaintiff acknowledged full payment. The plaintiff admits that the receipt of the money is stated in the deed, and pleads fraud, in this: that $5,000 of the consideration consisted in a note of the Gravois Railroad Company, of date March 6, 1874, which the defendant represented to plaintiff to be good; and, further, that it would be paid at maturity, and that the defendant would bind himself that it should be paid at maturity, when in fact the note was, as defendant knew, worthless when given.

It appears that the plaintiff approached the defendant with a view of inducing him to buy the property; that, after negotiations, the parties came to terms, which were embodied in a written agreement, of date March 21, 1874, signed by both, reciting, in substance, the sale; that defendant was to pay $30,000, partly by assuming a deed of trust on the real estate, partly by paying to plaintiff $10,000 in property, viz., a note of the railroad company for $5,000

and 200 shares of its stock, and that the plaintiff was to make a deed of warranty of the property. The note was signed by the defendant as president of the company, and was a negotiable note, payable "to the order of C. C. Rainwater, its president." It appears that, prior to the signing of the agreement, the plaintiff expected that the defendant would personally endorse the note; and upon the conversations which took place between the defendant and the plaintiff in regard to the note and its endorsement the case principally turns, the effort of the plaintiff being to prove fraud on the part of defendant in the course of these conversations. Into all the details of the evidence, as presented by this voluminous record, it is not essential to go, as it appears from the testimony of the plaintiff's witnesses that no such case is made out as charged in the bill. It appears clearly that the defendant, so far from binding himself that the note should be paid, expressly refused to guarantee the payment. It does not appear that there was any thing in the words or acts of the defendant that justified the plaintiff in assuming, as he did, that the defendant would endorse the note of the railroad company, so as to make himself liable. The evidence shows that, when this proposal was made, the defendant promptly refused to so endorse it, saying that if such an endorsement was insisted upon, then the trade was off. This being so, his reasons for refusing are immaterial, unless the fraud lay in the statement of those reasons. This could hardly be, unless the reasons consisted of statements as to facts. But, according to the plaintiff's testimony, the defendant, when refusing to individually endorse the note, and when saying that the note was good without his endorsement, accompanied those conclusions, not by details of fact, but by a long process of reasoning, the object of which was apparently to enable the plaintiff to judge for himself, and to show that defendant's deductions were opinions which he was justified in entertaining. The property of the com-

pany consisted of a street railroad, and appurtenances, in the city of St. Louis; and at the time of these transactions the road had been in operation but a little more than two months. It appears that it was an experiment, in which the defendant had confidence, as did many others. He gave his reasons, as the plaintiff states, to show why it was likely to succeed. The defendant was president of the company, but the statements made appear in very little part to have consisted of facts, or assertions as to particulars, within his knowledge as president. With the exception of the certainty or well-grounded expectation of the establishment of a union railroad depot on the line of the company's route, which was used as an argument to show that the company would be prosperous, and an assertion as to the number of passengers the company was carrying, in regard to neither of which is any misrepresentation or even inaccuracy shown, nothing definite or tangible appears, from the evidence, to have been stated in the way of facts. This is material, as the legal distinction between matters of fact which are peculiarly within the knowledge of the parties and mere matters of judgment and opinion is well established. *Speiglemyer* v. *Crawford*, 6 Paige, 254; *Hutchinson* v. *Brown*, 1 Clarke Ch. 416; *Smith* v. *Richards*, 13 Pet. 26. Reasoning is a process which is open to all; and courts of equity cannot interfere on the ground that the logic of parties is bad, or that their conclusions have not been justified by events.

That the statements of the defendant were conclusions, appears from the surrounding circumstances and the reasoning by which, as the plaintiff says, they were supported. As to precisely what these statements were, there is a disagreement among the plaintiff's witnesses. The agent of plaintiff does not say that the defendant stated that the note would be paid at maturity; and at different times the plaintiff gives somewhat different versions of these statements. The defendant testifies that he said he believed the note to

be good; but if it is granted that he said to the defendant that the note was good, and would be paid, this was not a statement as to a fact peculiarly within the knowledge of the defendant. The note was not payable until nearly a year; and the essential fact was not whether, if the affairs of the company were wound up at the time of the conversation, there would have been realized enough to pay its debts. The evidence of the plaintiff tending to show that in the two or three months of its existence its expenses exceeded its income, and that afterwards it could not pay its debts, and was sold out, under a second mortgage, for default of payment of the interest on its bonds, was very little to the purpose. Even if we suppose the defendant, who, though president of the newly-formed company, was engaged in other business, to have been acquainted with the minute details of account, and to have made the computations and averages which the plaintiff made after the event, yet common experience teaches that the failure of such an enterprise to make profits in its inception is no criterion by which to test its ultimate solvency or success. Least of all can it be shown by such far-fetched arguments that a party is guilty of fraud because, when he gives reasons, and apparently very good reasons, for the belief that is in him, he deduces from such arguments what appears to many of the witnesses to have been a legitimate conclusion, — that the company was a good one, and would pay its debts. The burden is on the plaintiff to show, by clear and direct proof, the fraud which is charged. It cannot be presumed, or inferred from remote calculations or from results.

It appears that up to the time of these conversations the company had met all its .paper; that, shortly before, the defendant had lent to it money, for which he had taken the note in question; that after this transaction he lent more money to it; that from time to time, for a year afterwards, he purchased stock of the corporation; and that, at the time of the trial in the court below, he was one of the

largest stockholders in the company. The evidence shows no suppression, or attempt at suppression, of particular facts ; on the contrary, the defendant told the plaintiff to satisfy himself as to the company, and to make enquiries of others ; and, acting upon this advice, the plaintiff did so. The plaintiff was apparently satisfied to take the stock, and it does not appear that he made any complaint in regard to it, though, as the defendant told him, if the note was not paid the stock would be worthless. In truth, the fact appears to be, from the testimony of the plaintiff's witnesses as well as from the evidence adduced by the defendant, that the property and franchises of the company were very valuable ; that its permanent success was probable, and that the enterprise temporarily failed from want of sufficient capital to enable the company to overcome the difficulties arising from the extraordinary expenses and limited receipts consequent upon a new undertaking of the kind.

It may be said that in his conversations with the plaintiff the defendant should have considered these contingencies. But he was not required closely to calculate every chance for the plaintiff's benefit. He occupied no position of trust or confidence towards the plaintiff. They were buyer and seller. The defendant had a right to praise his goods, as the plaintiff had a right to praise his land. The fact that the defendant was president of the company gave the plaintiff no right to rely on the former's statements as to matters of opinion. The plaintiff should have enquired, or have exercised his own judgment. He was bound to know that the ability of the new company to meet its obligations maturing in the future depended on results which then could only be guessed at ; and, indeed, the conversation was largely on that basis. The defendant had expressly refused to guarantee the debt ; and thus, by the very terms of the bargain, the plaintiff took the risk which he now seeks to avoid. That this was understood at the time is evident. At first the plaintiff refused to complete the bargain unless the

defendant guaranteed the debt. The parties were about to close the matter, and the defendant endorsed the note, as president of the company, it being on its face payable to him as president. The plaintiff then asked him to endorse it individually. This the defendant refused to do. By common consent the trade was then broken off. An interval of a few days elapsed. The plaintiff then — as his agent, called by him as a witness, testifies — told the agent that he thought he would take the note as it stood. The two conversed about it, and came to the conclusion that the note, as it was, was good. Upon this basis the written agreement was delivered and the matter finally closed.

This is not a case of imposition, or concealment, or misrepresentation of facts peculiarly within the knowledge of one party, like those cited by the appellant. The respondent appears to have acted fairly throughout. That he acted like a man of business is no impeachment of his fairness; nor does it give the appellant any claim upon a court of equity that he was of unequal capacity, and that the transaction has resulted unfavorably to him. The maxim that equality is equity does not imply that courts of chancery will regulate the results which arise from the varying degrees in which men possess shrewdness and the qualities which go to make up a talent for practical affairs.

From what has been said it is apparent that there is nothing to take this case out of the operation of the general rule, well settled in this State, that when the note or other instrument of a third person is given and received in payment of the purchase-money, the vendor so far waives his equitable lien. *Emison* v. *Whittlesy*, 55 Mo. 254; *Adams* v. *Buchanan*, 49 Mo. 64; *Durette* v. *Briggs*, 47 Mo. 362; *Sullivan* v. *Ferguson*, 40 Mo. 90; *Delassus* v. *Poston*, 19 Mo. 425; *Fish* v. *Howland*, 1 Paige, 20; *Gilman* v. *Brown*, 1 Mason, 212; *Griffin* v. *Blanchar*, 17 Cal. 70; 1 Ld. Cas. in Eq., Am. Notes, 484; 2 Washb. on Real Prop. 91. There can be no pretence of any express

agreement in this case that the implied lien should be retained; and the vendor wholly failed to rebut the presumption arising from his taking the note of the railroad company, as expressed in the written contract.

From what has been said above it is apparent that there is nothing in the objection of the appellant that the respondent did not properly endorse the note. If it be granted, even, that there was an ambiguity in the terms of the note, so as to render it open to explanation who was the legal payee, that ambiguity was removed by the acts and agreement of the parties. The appellant refused to become personally liable on the note, and solved the doubt, if there was one, by endorsing it "Gravois Railroad Company, by C. C. Rainwater, Prest." After refusing to accept the note so endorsed, the appellant finally did accept it with this endorsement. Thus the agreement was perfected, and·a negotiable note, properly endorsed, passed to the appellant. As this is not a bill to rescind a contract, the appellant must be bound by the agreement.

The court below properly dismissed the bill, and its decree will be affirmed. All the judges concur.