UNION NATIONAL BANK, Respondent, *v.* CHARLES L. HUNT ET AL., Appellants.

April 8, 1879.

1. To establish a defence founded upon false and fraudulent representations, it must be shown that the representations were false in a material matter, and made with the intent to deceive in regard to matters peculiarly within the knowledge of the party making them, that they were relied upon by the defendant, furnished his motive for entering into the contract, and that he used ordinary vigilance to ascertain the truth.

2. Where a bank purchases its own stock to protect itself from loss upon a debt, it is bound to sell the stock within six months, and may sell on credit and take the purchaser's note, with the stock sold as collateral to secure it, provided this is done in good faith.

3. An abuse of the corporate powers is not a sufficient defence to such a note. The question of misuser will not be decided collaterally by setting aside a sale otherwise good.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

NOBLE & ORRICK, for appellants: The bank is chargeable with fraudulent acts and representations done and made for the purpose of effecting the sale. — *Bank* v. *Peck*, 29 Conn. 384; *Wannall* v. *Kem*, 57 Mo. 478; *Bank* v. *Gregg*, 14 N. H. 331; *Hatch* v. *Taylor*, 10 N. H. 538. If representations of the character set forth in the answer were material, were false, were known to be false, and were made to induce the purchase, and relied on by the purchaser, they avoided the sale. — *Brown* v. *North*, 21 Mo. 528; *Joliffe* v. *Collins*, 21 Mo. 338; *City Bank* v. *Phillips*, 22 Mo. 85; *Irving* v. *Thomas*, 18 Me. 418; *McClellan* v. *Scott*, 24 Wis. 81. Misrepresentation need not be made by the party whom it benefits, in order to constitute a fraud as against him. — 2 Pars. on Con. *779, *780; *Warner* v. *Daniels*, 1 Woodb. & M. 90; *Howes* v. *Delamor*, 3 Ired. Eq. 219; *Bowen* v. *Johnson*, 10 Smed. & M. 73; *Lawrence* v. *Hand*, 23 Miss. 105. It is not necessary to a charge of fraud that the party deceived might have discovered the truth by proper inquiry. — *Central R. Co.* v. *Kisch*, L. R. 2 H. L. 99, 120; *Vigers* v. *Pike*, 8 Cl. & Fin. 562, 650; *Wilson* v. *Short*, 6 Hose, 366, 375. Contracts made as to banking, in violation of charter, void. — *Downing* v. *Ringer*, 7 Mo. 585; *Pelz* v. *Long*, 40 Mo. 532; *Carson* v. *Hunter*, 46 Mo. 467; *Bank of Lawrence* v. *Young*, 37 Mo. 398; *Griffith* v. *Commonwealth Bank*, 4 Mo. 255; 30 Mo. 183; *White* v. *Franklin Bank*, 22 Pick. 181; *Brown* v. *Tarkington*, 3 Wall. 381. When a contract is prohibited, whether expressly or by implication, it is illegal, and cannot be enforced. — *Beasley* v. *Bignold*, 5 Barn. & Ald. 335; *Foster* v. *Taylor*, 5 Barn. & Adol. 887; *Cope* v. *Rowlands*, 2 Mee. & W. 149.

JAMES O. BROADHEAD and WILLIAM F. BROADHEAD, for respondent: The purchase of its own stock by the bank, and its sale thereof on credit, taking the stock as collateral

to secure the note taken for the stock, is not a violation of
the bank's charter, and these facts constitute no defence to
an action on the note. — *Steam Nav. Co.* v. *Weed*, 17
Barb. 378 ; 16 Cal. 255 ; *Bank* v. *Hammond*, 1 Rich. 281 ;
*Insurance Co.* v. *Lanier*, 5 Fla. 164 ; 16 Serg. & R. 144 ;
*Little* v. *O'Brien*, 9 Mass. 423 ; *Fleckner* v. *Bank*, 8
Wheat. 338. An abuse of corporate powers in making a
contract will not enable the other party to avoid payment
under it. — *Insurance Co.* v. *Insurance Co.*, 7 Wend. 31 ;
*Glass Co.* v. *Dewey*, 16 Mass. 94 ; *Railroad Co.* v. *Proctor*,
29 Vt. 93 ; Abb. Dig. Corp. 245, sect. 305, referring to
4 Johns. Ch. 370 ; *Silver Lake Bank* v. *North*, 6 Hill, 33 ;
*The State* v. *Woram*, 5 Hill, 137 ; *Bank* v. *The President*, 11
Barb. 213. Representations, expressions of opinion, and
commendation of the subject of the contract, even if false
and groundless, constitute no defence. — *Mooney* v. *Miller*,
102 Mass. 247 ; *Manning* v. *Albee*, 22 Allen, 522. " In
order to make a representation a ground for an action of
deceit or fraud, or for a defence, it must be shown that it
was known to be false, and made with intent to deceive." —
*Peers* v. *Davis*, 29 Mo. 184 ; 64 Mo. 531.

BAKEWELL, J., delivered the opinion of the court.

This is an action on a promissory note made by the de-
fendant Theodore Hunt and indorsed by Charles L. Hunt.
There is an allegation that the indorser waived demand and
notice. As to this the jury found for the indorser, and as
to his liability nothing more need be said. The petition
alleges that the defendant Theodore Hunt purchased of Aull
& Pollard one hundred shares of stock in the bank of the
corporation plaintiff, at eighty cents on the dollar, in con-
sideration of which a note at four months for $8,000, made
by Theodore and indorsed by Charles Hunt, was given to
Aull & Pollard, and the stock transferred to Theodore Hunt ;
that the note was assigned to plaintiff for value, before ma-
turity, by Aull & Pollard ; that at the maturity of that note,

defendants requested an extension, and in consideration thereof executed the note in suit, which is dated June 4, 1873, and is for the same amount and time as the note of which it is a renewal.

The defendants admit the execution and indorsement of the note in suit, and that plaintiff was a banking corporation under the laws of the United States ; and deny the other allegations of the petition, and set up two distinct grounds of affirmative defence. First, they say that the plaintiff had purchased seven hundred and eighty shares of the stock of its own corporation, in violation of the act of Congress which prohibits such a bank to purchase or hold its own shares, or to make a loan upon them, except such security or purchase shall be necessary to prevent loss of a debt previously contracted in good faith ; and that, having and illegally holding these shares, plaintiff contrived that one hundred of these shares should be regarded as the property of Theodore Hunt, and that he should borrow from the bank $8,000 on such shares, and deposit them as collateral security for his note ; and that the note sued on was a renewal of the note given to carry out this illegal transaction, and represents a discount made by the bank on the security of its own shares, in violation of law. The second affirmative defence is that the note was obtained by false and fraudulent representations, and that the consideration has failed. The particulars of this defence are set out in the answer with great detail.

The testimony of Charles Hunt was to the effect that he is the father of his co-defendant, Theodore Hunt ; that he was on terms of intimacy with Aull, the president, and with Pollard, the vice-president of plaintiff, and with some of the directors ; that he kept his account in plaintiff's bank ; that his son Theodore, a man of about thirty years of age, had a separate estate, owned five shares in plaintiff's bank, was on intimate terms with the officers of plaintiff, and kept his account in plaintiff's bank ; that Pollard, in the presence of

Aull, represented to Charles Hunt that the bank had been compelled to purchase from the estate of O'Fallon & Hatch, in bankruptcy, a large number of its own shares ; that this had been done by the bank to protect itself, O'Fallon & Hatch being very heavily indebted to the bank.  Pollard said that he was desirous to sell these shares to friends of the directory ; and mentioned two or three men who would take one hundred shares each.   The bank, Pollard said, was in a flourishing condition, making money ; its shares were selling at eighty-two, and were worth a hundred, and would soon be sought for at that price.   Pollard requested Charles Hunt to get his son Theodore to take one hundred shares, out of friendship for the officers of the bank ; the dividends would pay the interest.   Pollard said that Theodore would never be called upon to pay the note ; that if he did not wish to hold the shares, they would find some one to take them off his hands.   This conversation was repeated by Charles Hunt to Theodore, word for word, without advising him in regard to the matter.   Charles Hunt told his son that if he desired to comply with Pollard's request, he, Charles, would indorse the note.   From his intimate friendship with Pollard, Charles Hunt believed that he was not deceiving him in these statements.   The note was executed and indorsed ; the certificates of stock were assigned by Theodore in blank, and the note and stock were rolled up together and put away in the vaults of the bank by Aull & Pollard, with the remark that if Theodore wanted the stock at any time for sixty or ninety days, to raise money on it, he could have it.   The testimony of Theodore Hunt corroborated that of his father.   He said he relied implicitly on Pollard's statements ; that he did not want the stock, and had no idea of buying it, except to accommodate his friend Pollard ; that the statement that the stock would soon be worth a hundred did not influence him, except so far as it went to show that there was no risk.   When the first note matured, he had a considerable sum in plaintiff's bank, and Pollard

asked him whether he would pay anything on the note. Theodore said of course he would not. Pollard said, ''All right. I thought perhaps you might wish to do so.'' The note was then renewed by the note in suit. Theodore paid accrued interest by his checks on plaintiff. He did this anticipating a dividend. The dividend was credited to him. He voted the stock on one occasion, when the question was as to the bank's going into liquidation. The bank failed in October, 1873, just before the maturity of the note sued on. Pollard died about a month after the failure.

There was evidence in the case from which a jury might infer that this stock at the time of the transaction belonged to the bank, being a part of seven hundred and eighty shares purchased by the bank, in the name of Aull & Pollard, from the assignee of O'Fallon & Hatch, to protect the bank, and to prevent loss from a *bona fide* indebtedness of the bankrupts to the bank. There was also evidence tending to show that the stock in question did not belong to the bank at any time, but was owned by Aull & Pollard, who were doing a brokerage business and speculating in stocks and bonds. There was evidence tending to show that Aull & Pollard owed the bank, when it failed, about $200,000; that their debt to the bank was paid before the suit. The evidence put the value of the stock, about the date of the alleged sale to Theodore Hunt, at from $75 to $82. It had been gradually rising for some time. Some years before the transaction, it had been down to $65, and it seems to have reached its highest point about the date of the sale to Theodore Hunt.

The jury found for the plaintiff as against Theodore Hunt, and the cause is here by appeal.

If the utmost weight is given to the testimony in support of the defendants, it does not establish a defence to the note. If, as they say, the transaction was wholly with the bank, the bank had an undoubted right to sell the shares. In fact, by law it was bound to sell them within

six months from the time of their purchase. There is no evidence in the case from which the jury could find that this was a loan of money by the bank to Hunt on the security of its own shares.

It is contended that the sale to Hunt was effected by false and fraudulent representations, upon which Hunt relied, and that the sale, for this reason, is void, and the note without consideration. In order to make out this defence, there must have been evidence from which it might be inferred that representations were made in a material matter, and that they were not only false, but made with intent to deceive, and in regard to particulars peculiarly within the knowledge of the officers of the bank making the representations, which must have been relied upon by Hunt, and have furnished the motive for the transaction on his part, and that he used ordinary vigilance to ascertain the truth. The statement that the stock was worth $82 does not appear to have been false; the statement that it would rise to $100 was a matter of opinion, and may possibly have been an honest statement. The stock had been rising, up to the date of this sale. The statement that the bank was flourishing and making money and that the investment was a good one is not shown to have been false; still less is it shown to have been fraudulent. The bank failed eight months afterwards, in a general panic. This proves nothing as to its condition in February, 1873. That Aull & Pollard owed the bank $200,000 when it failed, does not tend to show that it was not flourishing at the date this stock was sold. Nor is there any evidence that the bank was not prosperous in February, 1873. Edwards, one of the directors, swears that, looking back at things from the standpoint of subsequent events, he thinks the condition of the bank was not very prosperous in the spring of 1873; but he says he did not know it then. There is nothing to show that any statements made by Pollard or Aull to Hunt about the value of the stock or the condition of the bank were

false ; nothing from which it appears that the bank was not then believed by both of them to be in a prosperous condition. So far as any facts stated were peculiarly within the knowledge of the seller, they may have been true. Expressions of opinion, commendation of the subject of the contract, statements as to quality, productiveness, and value, are no grounds for setting a sale aside, although they are shown to be false. It is understood that they are distrusted. Besides, Theodore Hunt was a stockholder of plaintiff at the time of this purchase. As such, he had access to the books of the bank, and a right to know its condition. He chose to take the opinion of the officers of the bank as to its condition, without any effort to get at facts on which an opinion might be based. There was here no exercise of ordinary vigilance and attention. *Brown* v. *Castles*, 11 Cush. 350, and cases cited ; *Gordon* v. *Parmelee*, 2 Allen, 212 ; *Peers* v. *Davis*, 29 Mo. 184 ; 64 Mo. 531 ; *Stevens* v. *Rainwater*, 4 Mo. App. 292.

The court, at the instance of the plaintiff, instructed the jury that the representations of Pollard to Hunt that the bank was solvent and doing a good business and the shares worth $100 each, even if the representations were false, and were relied upon by Hunt, are no defence to the action. It sufficiently appears from what has been said that in this we see no error.

Other instructions for the plaintiff were to the effect that it was not illegal for the Union National Bank to purchase the stock of O'Fallon at sale by the assignee in bankruptcy, or to sell the same. To these instructions the defendants object, on the ground that the question was not whether the plaintiff could buy and sell this stock, but whether it could loan to Hunt money and take the stock as collateral. In this, we think, the defendants are wrong. There was no loan of any money to Hunt on this stock as collateral. The evidence is of a purchase, defendants say, from the bank, and the plaintiff says from Aull & Pollard. Defendants

further claim that there was an express oral agreement between the bank and themselves that the stock should protect the note, and that payment of the note should never be demanded; but, of course, they cannot insist upon this in the face of the writing. There is no evidence whatever of any advance of money by the bank to Hunt on the security of this stock.

The instructions refused embodied the following propositions: 1. That it was incompetent for plaintiff, under the United States banking-law, directly or indirectly to purchase its own stock from the assignee of a bankrupt debtor of the bank, and then to sell the same on credit, taking back the stock as security for the note given for the purchase-money.   2. That if Aull or Pollard, acting for the bank, represented to Hunt that the bank was flourishing, and its stock worth $100, and these statements were relied on by Hunt, and were known by Aull or Pollard to be false when made, the note is void. 3. That if the agreement was that the dividends on the stock should pay the interest on the note, and defendants relied on this agreement, plaintiff is estopped to require payment of the note.

As to the first proposition, it is enough to say that the bank could purchase its stock to prevent loss upon a debt. Having done so, it was bound by law to sell the stock within six months; and no reason appears why, having sold the stock and taken a note for the purchase, it might not receive its own stock as collateral for the note.

There is no evidence whatever that the bank meant anything else but a sale, — that it retained any ownership of the stock. The testimony of the defendants is, not that the bank promised to take back the stock in any event, but that Pollard said that he would find some one to take it off Hunt's hands if he got tired of carrying it.   But suppose we are wrong in this, and that the act is intended to prohibit the bank from holding its own stock as collateral for its price, that would not make the contract of sale void, or

prevent the bank from recovering upon the note. An abuse of its corporate powers might be a reason for punishing the bank, but would be no sufficient reason for not enforcing this contract in the interest of the creditors of the bank. The law will not permit a defendant to refuse payment upon his contract upon the ground that there was an abuse of the corporate powers in making it. As is said by Chancellor Kent in *Bank* v. *North*, 4 Johns. Ch. 370, a court will not decide a question of misuser in a collateral way, by setting aside a sale otherwise good. *Bank* v. *Hammond*, 1 Rich. L. 281; *Argenti* v. *San Francisco*, 16 Cal. 255 (cases cited p. 265); *Insurance Co.* v. *Lanier*, 5 Fla. 110; 8 Wheat. 338; 7 Wend. 31; 29 Vt. 93.

The other instructions were properly refused, for the reasons already stated. The judgment of the Circuit Court is affirmed. All the judges concur.