# SUPREME COURT

OF

# The State of Missouri

AT THE

## APRIL TERM, 1882.

---

BROWN *et al.*, *Appellants*, v. BARRETT.

**Vendor's Lien**: INNOCENT PURCHASER. Plaintiffs sold their land to one B., agreeing to receive in part payment of the purchase money a note which afterward turned out to be forged. Before the conveyance was consummated defendant took B.'s purchase off his hands and received a deed direct from plaintiffs, paying plaintiffs in part in the forged note, but without knowing of the forgery. *Held*, that the defendant was entitled to be treated as an innocent purchaser from B., and that plaintiffs could not enforce against the land in his hands a vendor's lien for the amount of the note.

*Appeal from Saline Circuit Court.*—Hon. Wm. T. Wood, Judge

Affirmed.

*O. A. Crandall* for appellants.

Before the contract between appellants and Ed. J. Brown had been executed, and while the title to the land in controversy was still in appellants, the defendant Barrett became their vendee, instead of Brown. By his trade with Brown, he took his place in the contract with the appellants—became the holder of the forged note, and undertook to pay all the purchase money for the land. It is well settled that a payment in forged or counterfeit notes is no payment at all; therefore, the delivery of the note and deed of trust for $5,000, which turned out to be forgeries, was no payment, but simply a nullity, and the amount of said forged note and interest is still due the appellants, for which they have a vendor's lien. Story on Notes, (5 Ed.) § 118; 2 Parsons Notes and Bills, 589, 590; 1 Daniel Negot. Inst., §§ 730, 731; *Markle v. Hatfield*, 2 John. 455; *Ontario Bank v. Lightbody*, 13 Wend. 101; *Simms v. Clark*, 11 Ill. 137; *Magee v. Carmack*, 13 Ill. 289; *Goodrich v. Tracy*, 43 Vt. 314; *s. c.*, 5 Am. Rep. 281.

*George G. Vest* and *Philips & Jackson* for respondent.

Henry, J.—In September, 1870, plaintiffs sold to E. J. Brown a tract of land in Pettis county for $13,390, which was to be paid as follows: $1,000 in sheep, $7,390 in cash, and the balance, $5,000, in a note purporting to have been executed by Henry J. Smith and secured by a deed of trust on 1,280 acres of land in Clay county, Iowa. There was a written contract between the parties embodying the terms of the agreement. The sheep were delivered, and it was agreed between the vendors and the vendee that the

vendors should execute a deed to the vendee for the Pettis county land, and leave it with Barrett until the balance of the purchase money and the said note and mortgage should have been paid and delivered to the vendors. The deed was executed and placed in Barrett's hands, and the balance of the purchase money and the note and mortgage were ultimately deposited with Barrett by E. J. Brown, but discovering a defect in the title of plaintiffs to the Pettis county land, the payment of the balance of the purchase money and the delivery of the note and mortgage of Smith, were deferred until the title should be perfected, and before this was done, Barrett purchased of E. J. Brown the Pettis county land, and, instead of taking a deed from him to the land, it was arranged that he should receive a deed directly from plaintiffs. The balance of the purchase money was then paid, and Smith's note and mortgage were delivered to plaintiffs, and they executed to Barrett a deed for the Pettis county land.

This suit was to enforce a vendor's lien against the land for the amount of the Smith note, plaintiffs alleging and proving that they were forgeries. It was also averred that Barrett knew that the note and mortgage were forged, and that the payment of that amount of the price he was to pay E. J. Brown for the land, was made with that note and mortgage. Barrett alleged that he paid E. J. Brown, of his own money and effects, the full amount he agreed to pay for the land, and that he delivered the note and mortgage of Smith to plaintiffs for E. J. Brown in compliance with the original agreement between E. J. Brown and plaintiffs, in payment of the amount E. J. Brown was to pay for the land. These issues were tried by the court and found for Barrett, and as there was abundant evidence to support that finding, we do not feel inclined to disturb it.

The question of law arising on the facts as found by the court, is, whether the plaintiffs have a lien upon the land, against Barrett, for the amount of the Smith note? That such a lien would have existed as between plaintiffs

and E. J. Brown, is clear, but assuming, as found by the trial court, that Barrett was an innocent purchaser, does the fact that he took his deed from plaintiffs, instead of E. J. Brown, continue the lien, notwithstanding the plaintiffs, for that part of the purchase money which they now seek to charge upon the land, took the note and mortgage in question ? Equity regards the substance rather than the form of a transaction. If an innocent purchaser had purchased of E. J. Brown and taken a deed from him, there would be no doubt that the original vendor could not enforce a lien for the Smith note against the land. It is well settled in this State, that taking collateral security for the purchase money of land will amount to a waiver of the lien, unless it is clearly shown that the intention was to reserve the lien. 40 Mo. 79; 47 Mo. 362; 49 Mo. 64; 66 Mo. 44; 67 Mo. 472. And such innocent purchaser cannot suffer in consequence of a failure of the original vendor to realize out of the collaterals the sum they were intended to secure, whether the collaterals were forged or affected with other infirmities which destroyed or impaired their value. The vendors had executed a deed conveying the land to E. J. Brown, and, instead of delivering this deed to E. J. Brown, for convenience it was withheld and plaintiffs conveyed directly to Barrett. On no principle of equity can Barrett, on the facts found, be regarded otherwise than as a purchaser from E. J. Brown. We are all of opinion that the judgment of the circuit court, which was in Barrett's favor, should be and it is, therefore, affirmed.