HENRY R. MORGAN, Appellant, *v.* FRANCIS SKIDDY et al.,
Respondents.

A director of a corporation who knowingly issues or sanctions the circu-
lation of a prospectus containing false statements of material facts, the
natural tendency of which is to deceive and to induce the public to
purchase the corporate stock, is liable for the damages sustained by one
who, relying upon and induced by the statements, makes such a pur-
chase.

It is sufficient to sustain the action that the false statements were one,
although not the sole inducement to the purchase.

The mere fact that a trustee allows his name and credit to be used to float
the stock of a corporation, which afterwards turns out to be worthless,
in the absence of evidence of knowledge on his part, or that he has
made or sanctioned any false representations, does not constitute
actionable fraud.

(Argued June 7, 1875; decided June 22, 1875.)

APPEAL from judgment of the General Term of the Supe-
rior Court of the city of New York, affirming a judgment
in favor of the defendants, entered upon an order dismissing
plaintiff's complaint on trial. (Reported below, 4 J. & S., 152.)

This was an action for fraud. The complaint, in sub-
stance, alleged that defendants, designing and intending to
cheat and defraud plaintiff and others, caused a certificate to
be filed of the organization of a mining corporation called the
Central Mining Company of Colorado, with a nominal capital
of $1,000,000, the certificate stating that "the said capital
is not to be owned or possessed by it in money, but is to
consist of and is to be represented by the mines and other
property necessary for the business of said company, to be
purchased by the trustees thereof, and to be paid for by the
issue of stock of said company," and did also make, issue
and publish, false and deceptive pamphlets and prospectuses
containing various false and fraudulent statements of facts
(which were specifically set forth and which appear in the
opinion), which they caused to be exhibited to plaintiff, well
knowing them to be false, whereby plaintiff, relying thereon,

was induced to make a purchase of the stock of said company, etc.

The facts appearing on the trial are sufficiently set forth in the opinion.

*Erastus Cooke* for the appellant. It is no answer to this action to say that plaintiff's purchase was not made from the defendants. (*Chester* v. *Dickerson*, 52 Barb., 349, 358; *Shotwell* v. *Mali*, 38 id., 445.) Defendants are responsible for the pamphlets and map. (*Arent* v. *Squire*, 1 Daly, 347; *Scott* v. *Depeyster*, 1 Edw. Ch., 513, 542, 543; *Hartwell* v. *Root*, 19 Johns., 345; Kerr on Fraud and Mistake, 140, 141; *Smith* v. *Richards*, 13 Pet., 26; *Elwell* v. *Dodge*, 33 Barb., 336; *Howard* v. *Hatch*, 29 id., 304; *Jackson* v. *Campbell*, 5 Wend., 575; *Chester* v. *Dickerson*, 52 Barb., 349; *Sage* v. *Sherman*, 2 Comst., 417; *Sweet* v. *Bradley*, 24 Barb., 549; *Hawkins* v. *Appleby*, 18 Wend., 185, 186; *Coster* v. *Bettner*, 1 Bosw., 490; *Townsend* v. *Bogart*, 11 Abb., 362; *Bennett* v. *Judson*, 21 N. Y., 238; *Craig* v. *Ward*, 36 Barb., 385; affirmed, 3 Keyes, 387; Story on Sales, § 165; *Ainslie* v. *Medleycott*, 9 Ves., 21; 1 Story's Eq., § 193; *Bennett* v. *Judson*, 21 N. Y., 241; *Wakeman* v. *Dalley*, 51 id., 34; *Craig* v. *Ward*, 36 id., 378; *Myers* v. *Amidon*, 45 id., 169; *Oberlander* v. *Speiss*, id., 175; *Hubbell* v. *Meigs*, 50 id., 480; *Marsh* v. *Falker*, 40 id., 566; *Fisher* v. *Miller*, 103 Mass., 503.)

*John S. Woodward, William W. McFarland, James W. Gerard* and *Henry Woodruff* for the respondents. To entitle plaintiff to go to the jury, there must have been evidence warranting them to find that guilty knowledge on the part of defendants existed. (*Marsh* v. *Falker*, 40 N. Y., 562; *Chester* v. *Comstock*, id., 576; *Lefler* v. *Field*, 52 id., 621; *Meyer* v. *Amidon*, 45 id., 169; *Oberlander* v. *Speiss*, id., 175; *Holdridge* v. *Webb*, 64 Barb., 9; *Hubbell* v. *Meigs*, 50 N. Y., 80; *Wakeman* v. *Dalley*, 51 id., 27; *Clark* v. *Dickson*, 6 C. B. [N. S.], 453; *Hubbard* v. *Briggs*,

31 N. Y., 518, 529; *Gerhard* v. *Bates*, 22 L. J. [Q. B.], 369; *Huntingford* v. *Mussly*, 1 F. & F., 690.) The appearance of the name of any one of the defendants upon the prospectus was not sufficient to charge him, even if it appeared that he knew his name was there. (*Wakeman* v. *Dalley*, 44 Barb., 498; 51 N. Y., 27; *Cullen* v. *Thompson*, 4 MacQ. H. of L. Cas., 441; *Moore* v. *Burke*, 1 F. & F., 258, 273, 277, 280; *Clarke* v. *Dickson*, 6 C. B. [N. S.], 453.) If the issue of the stock was irregular in form, such irregularity could only create a liability in favor of creditors of the corporation. (*Benton* v. *Hatch*, 47 N. Y., 225.) If the representations in the prospectus were false and fraudulent, they could form no ground of action unless made by one of the defendants to plaintiff, and relied upon by him when the purchase was made. (*Wakeman* v. *Dalley*, 51 N. Y., 27; *Arthur* v. *Griswold*, 55 id., 400.)

ANDREWS, J. In determining whether the trial court correctly granted a nonsuit, the plaintiff is entitled to the benefit of every inference from the evidence in support of his case, which the jury, if the case had been submitted to them, would have been entitled to draw.

The general facts are, that a corporation called " The Central Mining Company of Colorado " was formed on the 21st day of December, 1863, by the filing of a certificate under the general law of this State authorizing the formation of corporations for mining and other purposes. It stated that the capital stock should be $1,000,000, divided into 50,000 shares of twenty dollars each, but that it was not to consist of money, " but is to be represented by the mines and other property necessary for the business of the company, to be purchased by the trustees thereof, and to be paid for by the issue of stock of the company." The objects of the company were declared to be " the mining and separating of gold and other ores;" and the defendants, except Ashmore, were named as trustees for the first year. On the 20th day of January, 1864, a meeting of the board

of trustees was held in the city of New York; and, after it was organized by the appointment of a chairman and secretary, the defendant Gaylord, as the minutes state, "offered to the company a property in Colorado, of which a particular description was presented, to be paid for by the issue of 50,000 shares of the company's stock;" and, after an examination of the papers, a motion was carried to purchase the property upon the terms proposed by Mr. Gaylord. The defendant McVickar was elected president of the company. A code of by-laws was adopted, and the meeting adjourned; and this, so far as the case shows, was the only meeting of the board of trustees which was ever held. On the twenty-second of January, the defendant Gaylord, by deed, reciting a money consideration of ten dollars, and the receipt of 50,000 shares of the stock of the company, conveyed to the company two pieces of land in Gilpin county, Colorado, one of which is described as follows: "Fourteen hundred feet on the Bates extension quartz lode, being and including claims numbers nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, eighteen, nineteen, twenty, twenty-one and twenty-two, north-east from the discovery of said Bates extension."

Gaylord derived title to the property conveyed to the company by two deeds, one from Theodore H. Becker, embracing the property above described, dated May 5, 1860 (but in fact executed in 1863), in which the consideration was stated to be $30,000; and one from Harvey L. Graham, embracing the other property conveyed to the company, dated January 12, 1864, reciting a consideration of $5,000. The actual consideration paid by Gaylord for both pieces of property did not exceed $10,000. The whole stock of the company (50,000 shares), was issued to Gaylord January 21, 1864. On the same day, he transferred to the company 2,500 shares of the stock, and to H. S. Fearing, one of the firm of Dalton & Fearing, stock brokers, 10,000 shares *in trust*, but the persons beneficially interested in the trust are not named in the transfer.

The next step was the preparation of a prospectus by the

defendant Ashmore, upon the suggestion of the defendants McVickar and Gaylord. It was promptly prepared, and was printed on or before the 23d day of January, 1864. The name of the company and of the trustees appeared upon the title page; and it commenced by stating the fact of the organization of the company with 50,000 shares of stock, " and with a working capital of $50,000, viz., $25,000 in cash and $25,000 in stock." The prospectus then sets forth as follows: " The objects of the company are to purchase and work two properties in Colorado Territory, hereinafter described, viz.: One property on North Clear creek, as shown by the accompanying maps, at or near Black Hawk Point in Gregory Region, Gilpin county, Colorado, *embracing* 1,400 *feet on the celebrated Bates lode;* at this point the vein has already been explored by seven shafts, sunk at intervals of about fifty feet, and varying in depth from twenty to forty feet, exposing a vein varying from one and a half to four feet in width. Considerable quantities of ore have been taken from these openings, yielding gold equal in quantity to any yet mined from *this old and well known lode;* " and again: " The Bates lode is one of the oldest discoveries in Colorado, and has been profitably worked by many shafts, in some instances 300 feet in depth." The prospectus contains letters from various individuals giving most encouraging accounts of the Bates lode. One of them, purporting to be written to Gaylord by one B. F. Dalton, states that the writer has been in the mining region of Colorado ever since the discovery of gold in that Territory, and that the Bates lode " has proved very rich, more so than any other lode in the mountain," Another writes, that from the working of the claims by a Mr. Baxter on this lode with a small force, his "net profit is $100 a day," and that " his property on this lode which two months since was only valued at $40,000, he now holds three-fourths of it at $100,000." The result of an assay of ore taken from this lode is given, showing it to be very rich in gold; and the prospectus, after describing the other property of the company, concludes: " From

Opinion of the Court, per Andrews, J.

the foregoing statements, and from the *developements on our* 1,400 *feet on the Bates lode*, we are justified in saying our supply of ore will be inexhaustible, it having been proved, by the experience of other companies, that the deeper the workings, the richer and more productive the veins become."

The plaintiff was the first purchaser of the stock of the company. He received a letter from Mr. Dalton, of the firm of Dalton & Fearing, a trustee of the company, " calling his attention to the stock, and recommending it; " and thereupon, on the twenty-third of January, two days after the organization of the board of trustees, he went to the office of Dalton & Fearing and was shown the prospectus and map. The plaintiff, in his testimony, says: " One of the prospectuses was handed to me; I looked at it; I told Mr. Dalton I knew nothing at all about it. He says, ' It is all right,' and upon that I gave him my check for $5,000, in payment for 500 shares at ten dollars a share." Again he says, on cross-examination : " Mr. Dalton said to me ' It is all right,' and I gave him my check. I was handed that prospectus to read, and my attention was called to the map that hung on the wall; I read the prospectus, I ran my eye over it, and afterwards took it home with me, and read it over afterwards; I looked through it casually before I paid; I cannot tell whether I looked at the map before I completed the purchase of the stock, it was so long ago; I read the prospectus before I bought the stock; I did not read every word, though I looked more particularly to the property and the names that were in the company. I thought that was a sufficient guarantee of its being worth something. I did not think the men whose names I saw would be connected with a fraud."

The sale to the plaintiff was followed by sales through Dalton & Fearing of large amounts of stock of the company at ten dollars and upward a share ; and there was paid to Dalton and McVickar, on account of such sales, more than $200,000. ₀To whom the stock sold by Dalton & Fearing

belonged, does not very distinctly appear; but when sales were made Dalton and McVickar furnished the certificates and received the proceeds. The corporate enterprise proved to be a failure. Something was attempted in the way of working the mine, but after a few months the business was found unprofitable and was suspended, and has never been resumed. The representations in the prospectus, on investigation, proved to be false in several particulars. Instead of the company having 1,400 feet on the celebrated " Bates lode," as therein stated, it possessed 1,400 feet on the " Bates extension quartz lode," which was located 800 or 1,000 feet from the spur on which the " Bates lode " was, and separated therefrom by an intervening ravine, or gulch, and had not been proved to be the true extension of that vein. Mr. Bates, the discoverer of the " Bates lode," testified that there were three or four veins claimed by different owners to be " Bates extensions," and that, to his knowledge, the true continuation or extension of that vein had not been ascertained. The representations in the prospectus as to the exploration made on the land of the company were false. But two or three shafts had been sunk upon this property. Very little work had been done upon it, and the presence of valuable ores in any considerable quantities had not been discovered. The company owned no property on the " Bates lode," and the testimonials in the prospectus respecting it were misleading and deceptive; they had no reference to the property actually owned by the company, although in connection with the false description they appeared to relate to it, and must have been so understood by persons reading the prospectus who had no other knowledge upon the subject. The false statement in the prospectus related to an existing fact which materially affected the value of the shares; it was prepared for the purpose of circulation and to induce investments in the stock of the company. If the plaintiff purchased his stock relying upon the truth of the prospectus, he has a right of action for deceit against the persons who, with knowledge of the fraud and with intent to deceive, put it in

circulation. The representation was made to each person comprehended within the class of persons who were designed to be influenced by the prospectus; and when a prospectus of this character has been issued no other relation or privity between the parties need be shown, except that created by the wrongful and fraudulent act of the defendants in issuing or circulating the prospectus, and the resulting injury to the plaintiff. (*Clark* v. *Dixon*, 6 C. B. [N. S.], 453; *Central Railroad Co.* v. *Kish*, Law Rep. [2 Eng. and Irish App.], 100.)

It is hardly necessary to say that a director of a company who knowingly issues or sanctions the circulation of a false prospectus, containing untrue statements of material facts, the natural tendency of which is to mislead and deceive the community, and to induce the public to purchase its stock, is responsible to those who are injured thereby. Mere exaggerated statements of the prospects of a new enterprise will not subject those who make them to liability; but, as was said by the chancellor in *Central Railroad Company* v. *Kish*, "no material misstatement or concealment of any material fact ought to be permitted." The directors of a company are supposed to know the facts touching its condition and property, and their statements in respect to its affairs naturally attract public confidence. If they fraudulently unite in an attempt to deceive the public, and by false statements of facts to give credit and currency to its stock, it is but simple justice that they shall answer to those who have been deluded into giving confidence to them.

We agree with the General Term in their opinion that no cause of action was established against the defendants Travers, Skiddy and Jerome. Travers was elected one of the trustees, but he never accepted the appointment or acted as trustee; and so far as appears, was in no way connected with the organization or management of the company. The defendants Skiddy and Jerome were present at the organization of the board of trustees and participated in the action which resulted in the purchase of the Colorado lands from the defendant Gaylord; their interest in the company seemed

to be nominal merely. They each held five shares of the stock, and so far as this case shows, they never took any part in the management or business of the company after the occasion mentioned, and neither dealt in the stock or received any of the proceeds from its sale; and they are not shown to have known of the existence of the prospectus. There is, we think, no ground, upon the evidence, for imputing to them any actual fraud in the transaction. They assented to the purchase from Gaylord, and to give him in exchange for the land the whole of the stock of the company. But it does not appear that they knew the value of the property. The deeds to him expressed a consideration of but $30,000, but one of them, although actually executed in 1863 was dated in 1860, and in view of the extreme fluctuations in value of mining property between those years, it cannot be assumed without proof that they knew that the real value of the property in 1864, was so grossly disproportionate as it was, to the nominal amount of the stock given in exchange for it. The enterprise was speculative, as all parties must have understood. The plaintiff who purchased the stock at ten dollars a share, could not have supposed that the property of the company was equal in value to the par value of the stock. It may justly be said that the two trustees mentioned allowed their names and credit to be used to float, what afterwards turned out to be a worthless stock; but this alone does not constitute actionable fraud. The defendant McVickar stands in a different position. He was the originator and promoter of the company. The evidence warrants the inference that he had examined the title deeds held by Gaylord. He suggested the preparation of the prospectus, and made the map attached to it. As soon as the prospectus was issued, he became an active seller of the stock, and received large sums as the proceeds. These facts unexplained would, we think, have justified the jury in finding that he knew the true description of the property conveyed to the company by Gaylord, and that he sanctioned the use and circulation of the prospectus with the false description contained

in it. The fraudulent conduct of Gaylord was clearly established, and we think the evidence was also sufficient to require the question of fraud on the part of the defendant Ashmore to have been submitted to the jury.

The other fact necessary to be established by the plaintiff, in order to justify a recovery, viz., that he relied upon, and was deceived by the false description of the property in the prospectus, in purchasing the stock, is by no means clearly established. That he trusted to a considerable extent to the judgment of Dalton, and relied also upon the character of the men named as trustees, cannot be doubted. But we think there is some evidence that he relied also upon the statements in the prospectus. He looked over the prospectus before purchasing, and "read it." He looked, he says, "more particularly to the property and the names that were in the company." He said to Dalton after "looking" at the prospectus, "I know nothing at all about it," and Dalton said, "It is all right," and upon that I gave him a check for $5,000. It was for the jury to say, whether he did not to some extent, rely upon the description of the property in the prospectus in connection with the confirmation of its truth by Dalton, and the other circumstances proved. It is sufficient in order to maintain the action that the false statement was one, although it may not have been the sole inducement to the purchase. (*Clark* v. *Dickson, supra.*)

I am of opinion that the case should have been submitted to the jury as to the defendants McVickar, Gaylord and Ashmore, and that the judgment as to them, should be reversed. It is only intended to decide in this case that upon the case made by the plaintiff, the defendants named should have been put to their defence, and that the jury was the proper tribunal to pass upon the facts tending to establish their liability.

All concur; except CHURCH, Ch. J., not voting.

Judgment affirmed as to defendants Skiddy, Travers and Jerome; and as to defendants McVickar, Gaylord and Ashmore, reversed and new trial granted.