## EDWARD T. HORNBLOWER, Respondent, v. ELI J. CRANDALL ET AL., Appellants.

### May 20, 1879.

1. Where the record-entries sufficiently show that the judgment is made to follow a confirmation of the referee's report, that there was an informality in making up the record, which could work no injury to the appellant, is not a ground for reversing the judgment.

2. An objection that the finding of a referee is against the weight of evidence can be raised only in the trial court, and is properly raised there only by specifying the particular findings objected to and the distinct grounds of objection.

3. Where several persons engage in business jointly, and, to facilitate such business, use a corporate name and issue stock, and, in the promotion of the scheme, false representations are made by those holding themselves out as promoters and managers of the business as to the material facts of inducement and as to matters peculiarly within the knowledge of all the associates or their agents, all those engaged in the promotion of the business as associates of those making the false representations are liable to those who, relying upon such representations, purchase stock to their hurt.

4. That one of the associates thus connected is ignorant of the details of the business will not avail him where he had the means of knowing but trusted to his associates, and where he, with the others, received the benefits of the wrong-doing.

5. While the trial issues must be within the paper issues, they may be less.

APPEAL from St. Louis Circuit Court.
*Affirmed.*

T. C. FLETCHER, R. F. WINGATE, and J. B. BOWMAN, for appellants: Representations as to the original cost of property under such circumstances, where there is no fiduciary relation between the parties, furnish no ground for rescission. — *Holbrook* v. *Connor*, 60 Me. 578; *Hamer* v. *Cooper*, 8 Allen, 334; *Mooney* v. *Miller*, 102 Mass. 202; *Cooper* v. *Levering*, 106 Mass. 79; *New Phosphate Co.* v. *Erlanger*, 4 Cent. L. J. 510. *Caveat emptor* applies. — *Bishop* v. *Small*, 63 Me. 13; *Long* v. *Woodman*, 58 Me. 49; *Laidlaw* v. *Organ*, 2 Wheat. 178; *Bench* v. *Sheldon*, 14 Barb. 66; *Kintzing* v. *McElrath*, 5 Pa. St. 467. The representations made are not shown to have operated as the inducement to purchase. — *Slaughter* v. *Gerson*, 13 Wall. 383; *Union Bank* v. *Hunt*, 7 Mo. App. 42; *Jolliffe* v. *Collins*, 21 Mo. 338; *Parker* v. *Marquis*, 64 Mo. 42. Mere expressions of opinion are not sufficient. — *Page* v. *Bent*, 2 Metc. 374; *Tucker* v. *White*, 8 Cent. L. J. 67; *Haycraft* v. *Creasy*, 2 East, 92; *Littlefield* v. *Hutchinson*, 117 Mass. 193; *Stevens* v. *Rainwater*, 4 Mo. App. 293. The finding by the court of a material fact, wholly without evidence, and against undisputed evidence, is an error of law, and reviewable by this court. — *Sheldon* v. *Sheldon*, 51 N. Y. 354; *Mann* v. *Lord*, 51 N. Y. 447; *Illinois* v. *Northup*, 51 N. Y. 114. To hold McKeen as joint tort-feasor, a combination with Crandall to deceive Hornblower must be shown. In the entire absence of any proof of such conspiracy, the acts or declarations of Crandall are not competent evidence against the others, especially against McKeen, to whom the referee finds they were not even communicated. — *Brinkley* v. *Pratt*, 40 Md. 529; *Cramer* v. *Hornstad*, 41 Texas, —. The mere fact of allowing his name to be used as a director, in the absence of any evidence of knowledge on his part of any unfairness in the enterprise, which all the parties well understood was speculative, and in the face of the unquestioned fact that he did not make or sanction any false representation, does not constitute

actionable fraud. — *Morgan* v. *Skiddy et al.*, 62 N. Y. 319 ; *Wakeman* v. *Dally*, 31 N. Y. 27 ; *Arthur* v. *Griswold*, 55 N. Y. (Ct. App.) 400. When the stock is once *all taken*, no person can become a stockholder except by transfer. — *Lathrop* v. *Kneeland*, 46 Barb. 432. There is no allegation in the petition as to who transferred the stock to plaintiff. Even if the stock had been spurious, an over-issue, or unauthorized by the charter, the recourse of plaintiff would be first against the party who transferred the stock to him. There is no partnership nor agency averred, except as embodied in the averment of *conspiracy*. His remedy is alone against the party from whom he purchased. — *Seizer* v. *Mali*, 32 Barb. 76 ; *Kendall* v. *Stone*, 1 Seld. 14 ; *Gomportz* v. *Bartlett*, 75 Eng. Com. Law, 849 ; *Kempson* v. *Saunders*, 4 Bing. 5 ; *Nockels* v. *Crosby*, 3 Barn. & Cress. 814 ; *Bank* v. *Railroad Co.*, 3 Kern. 599 ; *Bank* v. *Bunk*, 16 N. Y. 125 ; *Zabriskie* v. *Smith*, — Kern. 330. The respondent had the same means of knowing as did the appellants, and the law imputes to him a knowledge of all the facts which an inquiry would have disclosed. — Kerr on Fraud, 262 ; *Ogilvie* v. *Insurance Co.*, 63 U. S. 380. It should affirmatively appear that *the report was approved*, and that the court founded its judgment on the testimony reported by the referee. — *Pomeroy* v. *Benton*, 6 Mo. App. 596 ; *Ely* v. *Owenby*, 59 Mo. 437 ; *O'Neil* v. *Cappel*, 62 Mo. 202.

Glover & Shepley and E. T. Allen, for the respondent : Misrepresentations may sustain an action for deceit though not made directly to the party influenced by them, and who acted upon them to his injury. — *Cazeaux* v. *Mali*, 25 Barb. 578 ; *Wardell* v. *Fosdick*, 13 Johns. 325 ; *Crocker* v. *Lewis*, 3 Sumn. 1 (Story, J.) ; *Cross* v. *Sackett*, 2 Bosw. 617 ; *Swift* v. *Winterbotham*, L. R. 8 Q. B. 253 ; *City Bank* v. *Phillips*, 22 Mo. 85 ; *Van Kleek* v. *Leroy*, 4 Abb. App. Dec. 479 ; *Gerhard* v. *Bates*, 2 El. & Bl. 476– 488 ; *Pilmore* v. *Hood*, 5 Bing. N. C. 97 ; *Scott* v. *Dixon*,

29 L. J. Exch. (N. s.) 62; *Seymour* v. *Bagshaw*, 18 C. B. 903; *Clarke* v. *Dickson*, 6 C. B. (N. s.) 453; 2 Add. on Torts, sects. 1010–1014; Cooley on Torts, 494, and cases cited in notes. They are bound *civiliter* by Crandall's acts, whether " they were joint owners, engaged at the time in the joint undertaking, [viz., the sale of this property] and therefore equally responsible for each other's statements in regard to it " ( *White* v. *Sawyer*, 16 Gray, 586; *Henslee* v. *Cannefex*, 49 Mo. 295; *Locke* v. *Stearns*, 1 Metc. 560; Greenl. on Ev., sect. 112; *St. Aubyn* v. *Smart*, L. R. 5. Eq. 153; L. R. 3 Ch. App. 646; *Colt* v. *Woolaston*, 2 P. Wms. 154; *Cook* v. *Cartner*, 9 Cush. 266; *McKnight* v. *Ratcliffe*, 44 Pa. St. 586; *Linton* v. *Hurley*, 14 Gray, 191; *Lloyd* v. *Bettis*, 27 L. T. 203; 37 Eng. Law & Eq. 545; *Vreeland* v. *Stone Co.*, 29 N. J. Eq. 188), or were all conusant to his " acting as agent for the whole, and did not forbid him to go on, but rather acquiesced in the bargains he had made, and thus gave him credit and standing " (*Mason* v. *Crosby*, 1 Woodb. & M. 359; *Pickard* v. *Sears*, 6 Ad. & E. 469; *Bronson's Executor* v. *Chappel*, 12 Wall. 683); or whether such agency is to be inferred in law, with all its consequences and adjuncts, because they chose to carry into effect his contracts and thus ratify his actions. — Woodbury, J., in *Mason* v. *Crosby*, 1 Woodb. & M. 358, and cases cited. Nor need they have known the falsity or fraud (of his representations and acts), in order to be charged with its civil consequences, if they have undertaken to receive the benefit of the contract made under it. — *Castle* v. *Bullard*, 23 How. 189; *Taylor* v. *Green*, 8 Car. & P. 316. "All who get gain by fraud, must bear the legal consequences of the wrong they do." — *Vreeland* v. *Stone Co.*, 29 N. J. Eq. 195; *Simons* v. *Vulcan Oil and Mining Co.*, 61 Pa. St. 202; *Chester* v. *Dickerson*, 54 N. Y. 1; *Miller* v. *Barber*, 66 N. Y. 558. Or whether they converted the money obtained from plaintiffs to their own use or not, or

carried out their fraudulent scheme after obtaining the money. — *Paddock* v. *Fletcher*, 42 Vt. 389. " If the agent acts fraudulently, even without the knowledge of the principal, the contract is vitiated."— *Wilson* v. *Fuller*, 3 Ad. & E. 58 ; *Doggett* v. *Emerson*, 1 Story, 735 ; *Hough* v. *Richardson*, 3 Story, 689 ; *Miller* v. *Barber*, 66 N. Y. 558 ; *Chester* v. *Dickerson*, 54 N. Y. 1. It is no objection to the report of the referee that it discloses acts of fraud not alleged in the petitions. It was competent for plaintiffs to prove representations made by defendants to other persons, at or near the same time, and of a similar character, and under similar circumstances, upon the question of fraudulent intent. — *Miller* v. *Barber*, 66 N. Y. 558 ; *Cary* v. *Houghtaling*, 1 Hill, 311 ; *Hall* v. *Naylor*, 18 N. Y. 508 ; *Warren* v. *Daniels*, 1 Woodb. & M. 90 ; *Bradley* v. *Chase*, 22 Me. 511 ; *Wood* v. *United States*, 16 Pet. 342, 360 ; 14 Pet. 430 ; 1 Stark. on Ev. 64 ; 2 id. 220 ; 1 Ph. on Ev. (Con. ed.), 179, 458, 463. The finding of a referee will not be reversed on the suggestion that it is against the weight of evidence, where there is any evidence to support it. — *Park* v. *Kitchen*, 1 Mo. App. 357 ; *Wood* v. *Missouri Zeitung Co.*, 3 Mo. App. 602 ; *Home Life Ins. Co.* v. *Potter*, 4 Mo. App. 594 ; *Reilly* v. *Russell*, 4 Mo. App. 581 ; *Brooks* v. *West*, 3 Mo. App. 357 ; *Franz* v. *Dietrick*, 49 Mo. 95 ; *Western* v. *Kribben*, 48 Mo. 37.

HAYDEN, J., delivered the opinion of the court.

·The petition, which contains the allegations necessary to an action on the case for deceit, charges that the defendants, of whom only two, Conlogue and McKeen, have appealed, conspired together to form a " bubble company," nominally for the purpose of working lead-lands in Missouri ; issued stock, and by false representations and other means fraudulently induced the plaintiff to purchase worthless shares. The defendants denied these allegations ; but the issues thus raised it is unnecessary to give, as by con-

HORNBLOWER v. CRANDALL. 225

sent the case went to a referee, who found the facts upon questions propounded.

It appears that the defendant Crandall and his associates, who afterwards formed the company in question, called the Pioneer Mining and Smelting Company, in the spring of 1871 purchased and partly paid for certain mineral lands in Missouri, and these lands were being worked by the parties as a voluntary association. The interests of these parties were not defined, as it was in contemplation to form a corporation. No fraud appears in the inception of the scheme, nor is it shown that the company was what is known as a bubble company. It had valuable property, and before its organization as a corporation, as well as afterwards, was apparently doing a legitimate business in lead-mining, and selling its products. In June, 1871, the organization took place, the defendants, who had hitherto been interested in the business as individuals, becoming the corporators. The property of the association was put into stock of five thousand shares, at $100 each, which the defendants took in various proportions.

The case of the plaintiff rests, not upon any sufficient evidence that the land was purchased or worked merely with a view to give color of legitimate business to a scheme to defraud, but upon acts and misrepresentations which were designed to mislead and which did materially mislead and deceive the plaintiff in regard to many essential particulars. Though the appellants attempt to argue this point, the findings of the referee are here conclusive, as it cannot be seriously contended that there is no evidence to support them. Crandall was in Missouri, where he lived, and was in charge of the business, while the plaintiff resided in Boston. The representations were in regard to matters of fact peculiarly within Crandall's knowledge, and were material. Among other things, Crandall, before the first purchase of stock, assured the plaintiff that the associates had paid $20,000 for land and other property, when they had neither paid

VOL. VII.                    15

nor agreed to pay any such sum, but had merely agreed to pay $10,000 for land, of which sum they had paid a part; and further, that they had purchased twelve hundred acres of other mineral lands, when they had not in fact bought any land except as just stated; that the stock of the corporation was based on an assessment of twenty per cent of its par value, which each stockholder was to pay in cash, and that upon this basis, which in fact never had any existence, the stock had been subscribed by the associates; that amounts had been paid for property by the company and received for lead, which had never been paid or received; that the concern was making profits, while in fact it was losing money. On September 28, 1871, Crandall represented to the plaintiff that the company had earned from May 1, 1871, to September 1, 1871, $2,537.68, and that the board of directors had thereupon declared a dividend of one-half of one per cent upon the capital stock, when in fact during the period named the company had earned no surplus and had not been out of debt, but had lost money, and no dividend had ever been earned by the company, but a sham dividend had been declared to give a fictitious value to the stock. Deceived by the statements of Crandall, the plaintiff bought eight hundred shares of the stock. It further appears that Crandall acted with a view of deceiving the plaintiff, and other persons who might purchase through the plaintiff, as Crandall not only refers in his letters to the "placing" of stock, but sent certificates in blank, requesting the plaintiff to return the names of the takers of the stock. Of the eight hundred shares, for which the plaintiff paid into the company $22,000, he afterwards sold two hundred to one Reed for $10,000, fifty shares to one Baker for $2,500, and one hundred shares to one Watson for $5,000, leaving in his own hands four hundred and fifty shares. Suits of a character similar to the present were brought against the defendants by Reed, Baker, and Watson, and all these suits, together with another brought

by one Whiting, were, upon issues nearly the same, referred to the referee, under an agreement that all the cases should be heard together, and that evidence in any one case should be deemed to apply to all the cases. There was judgment below for the plaintiffs.

It is first urged that the record does not show that the referee's report was confirmed, or the judgment based on its findings. The judgment of April 8, 1878, is expressed n informal language; but, without extrinsic reference, it is clear that that judgment is made to follow a confirmation of the report. The entry states "the exceptions to the report of the referee herein having been overruled, the court doth find the issues herein joined in favor of the plaintiff, and assess his damages," etc, "wherefore it is considered," etc. By a distinct order, made on January 7, 1878, the court below orders that the exceptions be overruled; and in the entry of judgment of April 8, 1878, the recital, " and the exceptions to the report of the referee herein having been overruled," has no meaning or pertinency where it is, except to show that the report is confirmed and judgment rendered accordingly. It is only on the basis of rejecting, or giving no meaning to the words just quoted, that it can be said that the trial court did not base its judgment on the findings of the referee. To show that the language used is a mere awkwardness of expression on the part of the clerk, it appears that in one of these cases, all of which were argued together, the entry is the same as above, but after the words, " considered by the court," follow the words, " that said report be and the same is hereby confirmed," etc. In all these cases it is clear that findings answering to a special verdict were made, received, and approved; and there was merely " an informality in entering the judgment on making up the record," which worked no prejudice to the appellants. Wag. Stats. 1036, sect. 19.

The referee finds that all of the representations were

made by the defendant Crandall, acting on behalf of himself and his co-defendants. It is contended that there is no evidence in the record tending to support this finding, so far as the present appellants are concerned. But, on examination, it will be found that this position resolves itself merely into an argument as to the weight of evidence. Into this question this court will not enter, the practice being settled by repeated decisions. In a common-law case, it is before the trial court that parties dissatisfied with the findings of a referee should question those findings; and this is properly done, not, as here, by a mere general exception that the findings are against the evidence and the weight of evidence, which, in the case of a mass of evidence which the trial court has not heard, gives no clew, but by specifications showing distinctly the particular findings objected to, and the grounds of objection.

That there was evidence tending to support the findings upon which, by the judgment of the court below, the liability of these appellants was based, appears clearly on examination. Crandall, indeed, swears that he acted on his own behalf and for his own benefit, and that the proceeds of the sale of stock came to his hands, and did not go to the use or benefit of Conlogue or McKeen. But in considering what is evidence tending to prove an issue, the character of that issue must be regarded. The question was as to the relation which these appellants bore to the representations which, upon the issues made, are the foundation of the action. This depends, not on the conclusions of a witness, but upon a great variety of facts. Here, without dwelling on the fact that these appellants united with Crandall and the others in a common answer in the Whiting case, and placed their justification upon a common ground, the appellants were original associates in an actual business, carrying it on as partners. McKeen, about whom only could doubt exist (the questions as to Conlogue being plain), was a partner of Minshall, who testifies that he put

$25,000 into the concern, and was ready to advance more. By McKeen's own account, Minshall had charge of this business for McKeen, who depended upon Minshall to represent him. McKeen says that he had considerable business with Crandall and Conlogue, " and confided in their integrity and judgment in this matter." To McKeen, when the shares were distributed, was assigned the same number as to Minshall. To this distribution McKeen must have been privy. He had signed the articles, and was present at the first meeting of the directors. But from this singular distribution an obvious inference arises. Crandall, who put no money into the concern, had one thousand eight hundred shares allotted to him ; but why, or for what purpose, unless as manager, to sell for the company, remains unexplained. As Crandall says, it was Minshall and not McKeen who furnished the money. McKeen, who certainly knew much better than Crandall, is unwilling to confirm the latter's statement. From McKeen's refusal to state what his interest was, and from his avoiding the question by saying that he depended upon Minshall to represent him, as well as from other facts, the inference is fair that in this, as in other business, he was a partner with Minshall. Indeed, McKeen's testimony is not reconcilable with the appellants' theory. If simply ignorant, he certainly would have testified differently. His affected want of knowledge as to the amount of stock he held, as to whether he was a director, as to whether he signed the articles, is not only evidence tending to prove complicity, but seems to destroy the appellants' theory. Why should he thus conceal, if there is nothing to be concealed ? For nearly two years he permitted himself to be a director ; he visited the office of Crandall & Co. ; he received, together with Minshall, eighty cents upon the dollar for their one hundred shares of stock from the manager of the company, when the stock was almost worthless. Surely, upon the appellants' theory he would have clearly explained this and his connection with

Minshall. Minshall, as treasurer of the company, indorsed the drafts which Crandall drew upon the plaintiff for money in payment of the stock sold. Though Crandall was ostensibly the holder of the stock thus disposed of, these drafts were payable to the order of Minshall, who was put forward as treasurer, and on their face charged " to account of Pioneer Mining and Smelting Company," the word " stock " being added in the second and third drafts. These drafts are contemporaneous evidence and tell their own story. If, as the appellants contend, the money of the plaintiff went into the pocket of Crandall, and the transaction was merely a personal one, it at least cannot be said, in face of the drafts and of the fact that the agency of Minshall was thus invoked, that there is nothing tending to show that McKeen received any part of the plaintiff's money. To say that the words of the drafts mean nothing, and to say that there is no basis for the inference that Minshall and McKeen, who had advanced money, — for if McKeen had advanced none, he would have said so, — received their share of the funds thus realized, is to assume positions obviously untenable. A further fact is the signing of the names of Minshall and McKeen to the stock-subscription list of the new record-book which was made out upon the culpable destruction or concealment of the original account-books of the company. Upon the supposition that these appellants had no connection with Crandall's misrepresentations, it is not easy to see why they should have felt themselves called upon to assist him in perfecting the scheme by which he gave plausibility to the destruction of the evidence of his fraud.

From what has been said, it is clear that a jury would have been authorized to infer participation on the part of these appellants in Crandall's acts. The implication of authority is here more directly made out than the law requires. Promoters of companies are not, indeed, merely as such, each other's agents, or liable for each other's acts.

It was formerly held that persons engaged in establishing companies were partners, as they were acting together for a common object with a view of sharing gains; but such is not now the accepted doctrine. Lindley on Part. (ed. 1878) pp. 31, 54, 240, and *c. c.* An association for forming a company is not necessarily a partnership, and the question is whether there is a basis of fact for the legal implication of agency. The principal is liable for the torts of his agents committed in the course of the principal's business. It is no defence that the principal has not authorized the deceit, if it is committed in the matter intrusted by the principal to his agent. Where the deceitful contrivance is for the principal's benefit, and done in the course of his business, the question, at its best, is, who of two innocent parties shall suffer? And the rule is, as it ought to be, that he who has put his trust in the wrong-doer, and held him out to the world as a person to be dealt with, shall bear the burden of his acts. *Locke* v. *Stearns*, 1 Metc. 560; *White* v. *Sawyer*, 16 Gray, 586; *Barwick* v. *Bank*, L. R. 2 Exch. *259; *Mackay* v. *Bank*, L. R. 5 P. C. 394; *Swift* v. *Jewsbury*, L. R. 9 Q. B. 301; *St. Aubyn* v. *Smart*, L. R. 5 Eq. 183. This rule has here a direct application, as there was at first, not merely a number of persons pursuing a scheme in concert, with a view to a future object, but persons engaged in actual business together, each taking more or less part in the concern. The fact that they afterwards used, as a means to advance the business, the corporate form, and manipulated shares of stock, cannot shield them from the legal consequences of their joint action. All of the defendants did something toward the common end; and in what McKeen did not directly do, he trusted, as he says, to the judgment of Crandall and Conlogue, in whom he confided, and to his partner, Minshall.

If, with the means of knowledge at hand, an associate thus connected, either through design or carelessness, abstains from knowing and leaves details to his companions,

while the illicit gains go to the common account, his ignorance ought not to avail him. The law would be helpless if its obligations could be avoided by this convenient ignorance. Where the parties sought to be charged might have known, and where it can fairly be inferred that they, with the wrong-doers, received the benefit of the contrivance, their ignorance cannot avail them. *Simons* v. *Vulcan, etc. Co.*, 61 Pa. St. 202; *Castle* v. *Bullard*, 23 How. 189; *Vreeland* v. *New Jersey, etc. Co.*, 29 N. J. Eq. 195; *Chester* v. *Dickerson*, 54 N. Y. 1.

The doctrine by which the defendants are here made liable is a well-settled doctrine. Persons investing in stock under circumstances like the present have a right to confide in those who hold themselves out as the promoters and managers of a business which they are carrying on, so far as concerns representations made by such promoters, or under their authority, as to material facts of inducement peculiarly within the knowledge of the associates or their agents. *Cross* v. *Sackett*, 2 Bosw. 617; *Cazeaux* v. *Mali*, 25 Barb. 583; *Simons* v. *Vulcan, etc. Co.*, *supra; Morgan* v. *Skiddy*, 62 N. Y. 319; *Miller* v. *Barber*, 66 N. Y. 558; *Bradley* v. *Poole*, 98 Mass. 169; *New, etc. Co.* v. *Erlanger*, 4 Cent. L. J. 510. The recent English cases are collected and distinguished by Mr. Justice Lindley in the last edition of his work upon Partnership (p. 935). The line which divides cases like the present from *Stevens* v. *Rainwater*, 4 Mo. App. 292, and *Union Bank* v. *Hunt* (*ante*, p. 42), has been incidentally pointed out, and is too obvious to be further dwelt upon.

The referee finds that in purchasing the stock the plaintiff relied upon such of the representations, hereinbefore stated, as had been made at the respective dates when the instalments of stock were purchased. This being so, it is not an objection that the plaintiff made inquiries in other directions. It may fairly be inferred that his main and substantial reliance was upon what these defendants said and did; and, as bearing upon this point, the matter of the sham dividend is

of especial significance. Nor is it material that with the fraudulent representations as to matters of fact many expressions of opinion were mingled which would have afforded no ground of action.

As the issues framed were within the pleadings, it is irrelevant now to urge that the precise issues made by the pleadings were not regarded. Parties have a right to narrow the issues upon trial, and this is constantly done. The trial issues must be within the paper issues, but the former often comprise but few of the latter. Here, though the petition contained much that was unnecessary, it contained all that was essential, and there is nothing in the motion in arrest of judgment. The judgment rests on the referee's findings, not upon the truth of all the allegations of the petition.

The judgment of the court below is affirmed. All the judges concur.