AUGUSTUS SUMNER, Appellant, v. AMOS TUCK, Respondent.

**April 19, 1881.**

1. Where objection to the joinder of a cause of action *ex delicto* with one *ex contractu* is not taken by demurrer or answer it will be considered as waived.

2. Where no objection is made to a petition because it improperly joins an action on contract with one for a tort, if there is no claim of a surprise, and there is evidence to warrant a recovery on contract, the cause should go to the jury, though the action has been treated, by court and counsel, as one *ex delicto*.

APPEAL from the St. Louis Circuit Court, BOYLE, J.
*Reversed and remanded.*

E. T. ALLEN and W. S. HILLS, for the appellant: Whether the petition be regarded as stating causes of action for deceit, or causes of action for money had and received (regarding as surplusage any averments of fraud), the plaintiff was entitled to a verdict, as the evidence stood at the end of plaintiff's case. —*House* v. *Lowell*, 45 Mo. 383; *Pickering* v. *Transportation Co.*, 47 Mo. 457; *Williams* v. *Fisher*, 50 Mo. 198; *Ahern* v. *Collins*, 39 Mo. 145; *Biddle* v. *Runney*, 52 Mo. 153; *Elfrank* v. *Seiler*, 54 Mo. 134; *Pomeroy* v. *Benton*, 57 Mo. 531, 555; *Dailey* v. *Houston*, 58 Mo. 361; *Gimbell* v. *Piquers*, 62 Mo. 243; *Mead* v. *Brown*, 65 Mo. 552.

S. M. SMITH and SMITH P. GALT, for the respondent: A party cannot declare on one cause of action and obtain judgment on another and different cause of action. — *Robinson* v. *Rice*, 20 Mo. 229; *Pensenneau* v. *Pensenneau*, 22

Mo. 27; *Harris* v. *Railroad Co.*, 37 Mo. 309; *Jones* v. *Loudermann*, 39 Mo. 289; *Browning* v. *Walburn*, 45 Mo. 457. "A party cannot set up one cause of action in his petition, and on the trial prove another and different one."— *Dougherty* v. *Matthews*, 35 Mo. 520.

Lewis, P. J., delivered the opinion of the court.

The amended petition in this cause is as follows: —

" The plaintiff in the said cause (by leave of court) files this, his amended petition, and states that he was merely a surety, and Merrick & Stickney were the principals, upon a note, of which the following is a copy: —

' $22,000.00.                St. Louis, December 7, 1869.

' For value received, we jointly and severally promise Amos Tuck, of Exeter, New Hampshire, to pay him or his order, twenty-two thousand dollars, on the first day of January, 1872, with interest on the first days of January and July in each year, at the rate of ten per cent per annum, payable at the Tremont Bank, Boston, Massachusetts. This note is secured by mortgage, duly stamped according to law.

' Elliott T. Merrick.
' W. W. Stickney.
' Augustus Sumner.'

" This note was secured by a mortgage upon one thousand five hundred and ninety acres of land; one-half of which was owned by plaintiff, and the other half by Merrick & Stickney, and located in St. Charles County, Missouri. Whatever consideration went to support said original note, the same passed solely to Merrick & Stickney, and this plaintiff had no use or enjoyment thereof in any manner whatsoever. Plaintiff was simply and purely a surety on said note, and of this fact the defendant had full knowledge from the time of its delivery to him.

" Plaintiff states that said Merrick & Stickney were then — and for several years had been — partners in business, and Stickney had, on the twelfth day of August,

1869, procured a contract of St. Charles County, Missouri, for the drainage of Marais Temps Clair Lake and contiguous lands. This contract was very valuable ; and on the same day said $22,000 note was executed, Stickney assigned as additional security to said note, and delivered to defendant all the benefits of said drainage contract. The assignment was as follows, in defendant's own handwriting : —

'For value received, I hereby assign to Amos Tuck, of Exeter, New Hampshire, all sums of money, bonds, etc., to which I am entitled by virtue of the above contract, and the fulfilment of it to him, his heirs and assigns, and I request said county of St. Charles, and the authorities thereof, to make payment to said Amos Tuck and assigns according to the tenor of this assignment.

' W. W. STICKNEY.

'*December* 7, 1869.'

'' Said Stickney completed the work under this contract, and the county of St. Charles issued and delivered under the contract and assignment, about $30,000 in bonds, bearing ten per cent per annum interest. These bonds the defendant should have applied to the payment of the $22,000 note ; but he wholly failed to do so, and wilfully, and in fraudulent disregard of said plaintiff's rights in the premises, devoted the bonds to other uses ; and plaintiff avers that by these fraudulent acts in failing to apply the bonds to pay the note aforesaid, but diverted, with fraudulent purpose to injure plaintiff, to other channels, this plaintiff was released from all liability to pay, as surety or otherwise, any part of said note. Plaintiff further states that the defendant, conspiring with others, and with intent to cheat and defraud plaintiff, and without plaintiff's knowledge or consent, did, on the eighth day of November, 1870, execute and deliver to Benjamin and Cyrus Smith a deed of release to said Merrick & Stickney's undivided one-half interest in said one thousand five hundred and ninety acres of land in St. Charles County, and on the same day caused Merrick &

Stickney to convey by warranty-deed to said Smiths, their said half interest in the lands, and thereupon the said Smiths paid to defendant a large sum of money, amounting, as plaintiff is informed and believes and so alleges the fact to be, to the sum of $21,000 ; but not a single dollar of this money was ever credited upon said $22,000 note.

" Plaintiff further states that he was actually kept in the dark by Tuck, the defendant, concerning all those actings and doings, and plaintiff had no knowledge of this release, the making of the deed, nor the receipt of the purchase-money therefor by Tuck, until long after the damages hereinafter complained of were inflicted upon him.

" Plaintiff says that by reason of these acts of the defendant, any and all liability, if any subsisted, to pay said note was entirely extinguished.

" Plaintiff further states that about the tenth day of January, 1873, defendant was still holding said $22,000 note, not cancelled (as it should have been), and defendant was aware that plaintiff was entirely ignorant of the receipt and disposition of the bonds aforesaid, and ignorant of the fact that Tuck had released Merrick & Stickney's half of the land in St. Charles County ; and said Tuck, well aware of the fact that Merrick & Stickney were insolvent and on the brink of bankruptcy, began sorely to vex and press plaintiff for money on said note ; and that plaintiff, being misled and fraudulently deceived by defendant, was still laboring under the false impression he was holden on said note as surety, and he paid the defendant a half year's interest then claimed by defendant to be due, and amounting to $1,100, whereby plaintiff was damaged in the sum of $1,100, for which, with interest from the — day of January, 1873, the plaintiff prays judgment against defendant, with costs.

" For a second cause of action, plaintiff states that in the month of January, 1873, the defendant, fraudulently and with intent to deceive plaintiff, represented to him that certain notes and mortgages, securing or purporting to

secure the same, on Kansas real estate, and which were held by defendant, of the nominal value of $22,000, were first-mortgage notes, and as good and solvent securities, with perfect titles to all the lands mortgaged. And plaintiff further states that he was merely a surety, and Merrick & Stickney were the principals upon a note of which the following is a copy."

What follows is a reproduction of the allegations and copies in the first count, up to what occurred on January 10, 1873. Here the petition proceeds thus : —

" Plaintiff further states that on or about the tenth day of January, 1873, defendant was still holding said $22,000 note, not cancelled (as it should have been), and the defendant was aware that this plaintiff was entirely ignorant of the receipt and disposition of the bonds aforesaid, and ignorant of the fact that Tuck had released Merrick & Stickney's half of the land in St. Charles County ; and said Tuck, well aware of the fact that Merrick & Stickney were insolvent and on the brink of bankruptcy, began sorely to vex and press plaintiff for money on said note ; and the plaintiff, being misled and fraudulently deceived by defendant, was still laboring under the false belief that he was holden on said note as surety. And the defendant, by his cunning and fraudulent artifices, imposed upon plaintiff, and induced him to pay defendant $35,000 for the said Kansas claims, and the $22,000 note and mortgage, to which plaintiff's name, as stated, was signed. Plaintiff says that in all these dealings he trusted in the good faith and integrity of defendant, and believed and acted almost wholly upon his representations. All of said notes and mortgages were delivered to plaintiff or his brother, William Sumner, for plaintiff. A few weeks thereafter the defendant left the State of Missouri, where he had for several years resided, and has never since returned. Plaintiff then soon ascertained that about one thousand acres of said Kansas lands, covered by said mortgages, had been sold and mortgaged away long before the

date of any of the claims received from defendant by plaintiff; that about three hundred and twenty acres had never belonged to the persons mortgaging them.

" And to this extent the Kansas claims were utterly worthless, and plaintiff learned that a large portion of the remainder of the lands mentioned in the mortgages were not worth one-half as much as defendant has fraudulently represented them to plaintiff to be worth. From these facts and truths, this fraudulently exaggerated value of $22,000, as made by defendant, shrunk down to $13,000 value at the time plaintiff received said securities from defendant; and plaintiff avers that this sum of $13,000 of value is all that plaintiff received of defendant for the $35,000 paid him. Plaintiff states that about the time of the discovery of the gross frauds practised upon him, said Tuck was travelling in Europe, and so soon as plaintiff could, after the defendant returned to the State of New Hampshire from Europe, plaintiff tendered all the said notes and mortgages — just as he had received them — back to defendant, and demanded the return of the $36,100 which plaintiff had paid defendant; but defendant refused the securities and declined to return the money.

"Plaintiff states that he holds the $13,000 of value, as aforesaid, which, deducted from the $35,000, fixes the amount he has been damaged as of this second cause of action; and therefore plaintiff prays judgment against defendant for the sum of $22,000, with interest from January 22, 1873, and costs. Wherefore judgment is asked on both counts for $23,100, interest as before asked, with all costs of suit."

The answer was a general denial. The record of the testimony is too voluminous to be reproduced here with any compensatory result. Except as hereinafter noted, it tended generally to sustain the allegations in the petition. The court instructed the jury that, upon the evidence introduced, the plaintiff was not entitled to recover.

A novel question in pleading arises, which furnishes an important illustration of the fundamental differences be_ tween the old system and the new, and of the necessity for a clear understanding of what has been discarded in the modern departure from the precedents of centuries. It is assumed on behalf of the defendant, that the petition proceeds as in an action for a deceit; and in this view, it is maintained that there was no testimony whatever to establish the essential groundwork of such an action. It is further insisted that, while it may be admitted that the first count contains also elements sufficient to constitute an action for money had and received, yet the second count contains no such elements. It is therefore impossible to treat the first count as for money had and received, since to do so would be to develop a misjoinder of that complaint, *ex contractu*, with the second count, which is *ex delicto*. It is insisted that, although the statute treats the objection of misjoinder as waived, unless taken by demurrer, yet that rule cannot be applied here; because a demurrer would necessarily have failed, on the ground that the first count contains the proper constituents of an action *ex delicto*. In other words, the first count states facts sufficient to constitute a cause of action *ex delicto*, but, upon rejecting certain words as surplusage, it will still be sufficient for an action *ex contractu*. In its *ex delicto* capacity it is properly joined with the second count, wherefore a demurrer could not disturb it. But if the court were to treat it, under any circumstances, as for money had and received, then there would be a misjoinder which should be fatal to the plaintiff's case, and for which, nevertheless, the defendant would have no remedy. Both counts must, therefore, be treated exclusively as for a deceit; and, inasmuch as no deliberate and wilful deceit was proved, the case was properly taken from the jury.

If there is a fundamental error in this reasoning, it would seem to result from the difficulty of getting rid of

the dogmas which upheld the common-law system of plead
ing.   Some of those dogmas are not merely ignored, but
are absolutely reversed in the modern code practice.   The
earliest conceptions of practical jurisprudence made the
writ, or the form of approach to the temple of justice, the
grand central idea, upon which everything else depended.
It was defined by the sovereign authority, and tendered to
the subject to be used only when he could show his matter
of grievance to be within its exact terms.   If he failed of
such a showing — if he mistook by a hair's breadth in
choosing between two different writs or forms — the doors
of the temple were promptly closed against him, whatever
might be the claims of abstract justice, as between him
and his adversary.   In the growing complications of human
affairs it sometimes happened that a great and manifest
wrong was committed by one person against another, and
yet the sufferer could find no redress, because a writ had
not yet been invented to cover just such a case.   This led
to the occasional introduction of a new writ, or form of
action ; but not until the reign of Edward I. was a general
authority given by statute for the framing of new writs for
cases not falling within the scope of those already in use.
Thus jurisdiction was shaped by the remedy and not by the
grievance.   All of which is in striking contrast with the
code system, wherein the jurisdiction looks first of all to
the fact of grievance demanding redress ; and, asking no.
questions about the particular form in which the demand is
made, declares that one form, the civil action, shall suffice
for any and every case wherein the grievance and the right
of redress shall plainly appear.   It resulted from the pre-
eminence given in the old system to an exact conformity
with the writ, that a misjoinder of counts in the declaration
was fatal to the action, at whatever stage it might first
be discovered.   It destroyed the foundation.   The whole
structure must therefore fall.   The objection could be raised

with fatal effect by a motion in arrest, or even upon a writ of error.

The new system prescribes certain exact rules for the joining of various causes of action in the same petition, but for very different reasons, and with very different penalties for their violation. A misjoinder involves no incongruous admixture of forms or of writs, because there is but one form and but one writ for all possible cases. There is no reason why it should be fatal to the action, *per se*, and the law does not declare it so. A cause of action *ex delicto* must not be united with one *ex contractu*, but why? The statute forbids it, and if a reason for the statute must be found, it seems to appear in the policy which refuses to subject a defendant, against his will, to diverse styles of warfare in the same fight. Hence it is provided that he may nevertheless waive all such objections by refusing to demur. If he accepts the fight as tendered, the law will not permit him afterwards to object, nor will it find that, by reason of the misjoinder, the foundation of the action is insufficient to sustain it. The statute is explicit, that, if the objection of misjoinder be not raised by demurrer or answer, it shall be deemed to be waived. Rev. Stats., sects. 3515, 3519.

With so vast a difference before us, between the common-law estimate of a misjoinder of causes of action and that placed upon it by the Code, we cannot admit that the action of the court below is sustainable on the grounds presented by the defendant. To say that such an interpretation of the first count in this petition as will involve a misjoinder with the second must be fatal to the action, is to readopt what has been rejected by the Code as inconsistent with a fundamental principle of its operation. That a party improperly unites several causes of action can work no detriment further than the elimination of some of them; and not even that if the adverse party fails to complain at the proper time. This is equivalent to saying that if the adversary does not properly object, there is no misjoinder at all;

the court, then, in the absence of such objection, cannot consider the supposed fact of misjoinder for any purpose in any contingency. It follows that if, in taking the present case from the jury, the court was controlled by the supposed results of a possible misjoinder, its conclusion, so controlled, was erroneous, unless justified by other influences of superior force. The fact that a demurrer, or an objection by answer, would have been unsuccessful, is of no weight whatever. Either would have at least placed the defendant on record as not waiving the objection. A motion to make the petition more definite and certain might have resulted in confining the plaintiff to a cause of action in the first count which might properly be united with that in the second, or in the striking out of one count or the other. In any event, the court would have had some show of authority for conforming all the later proceedings to the strict rule of propriety in the uniting of different causes of action. The statute admits of no such authority in the absence of proper objections, and recognizes no exception to the general rule. *Williamson* v. *Fischer*, 50 Mo. 198.

It is a settled interpretation of the Practice Act that, if a petition sets forth facts sufficient to constitute a cause of action, the plaintiff's right of redress is not to be prejudiced by the fact that further and unnecessary statements are superadded. If he states and proves a right of recovery upon contract, he is not to be denied a judgment because there are, also, allegations of fraud or deceit which he has failed to prove. *House* v. *Lowell*, 45 Mo. 383 ; *Byxbie* v. *Wood*, 24 N. Y. 607 ; *Conaughty* v. *Nichols*, 42 N. Y. 83 ; *Tugman* v. *Steamship Co.*, 76 N. Y. 207 ; *Neftel* v. *Lightstone*, 77 N. Y. 96 ; *Veeder* v. *Cooley*, 2 Hun, 74 ; *Hornblower* v. *Crandall*, 7 Mo. App. 220.

We think it sufficiently appears in the first count of the petition in this case, that the sum of $1,100 for interest was paid by the plaintiff to the defendant, under circumstances sufficient to entitle him to recover it back again as money

had and received to the use of the plaintiff. The proofs failed as to many of the facts alleged. But there was at least testimony tending substantially to show that the release of the Merrick & Stickney mortgage upon one-half of the St. Charles lands had been made without the knowledge or consent of the plaintiff, and under circumstances which should release him from liability on the $22,000 note which he had signed as a surety. Many facts shown in the evidence are relied upon by the defendant as countervailing the plaintiff's claim of such discharge from liability. But all such facts should have been left to the jury, with proper instructions. This remark will apply generally to all the points here presented for the defendant, concerning the first count in the petition. As to the second count, we do not perceive that the ruling of the court was erroneous.

We have shown that in our view, the plaintiff's right to go to the jury upon his contract-demand was not to be denied on account of its alleged misjoinder with the *ex delicto* claim in the second count. Nor was his right prejudiced, in our opinion, by the circumstance that both court and counsel treated the case throughout as an action for deceit. Every question must be tested by the real record of the cause, and not by an unauthorized understanding of its purport. There was no surprise upon the defendant, nor was he deprived of any defence against the contract liability by reason of what was said or agreed upon with reference to the tortious aspects of the complaint.

For error committed in sustaining the demurrer to the evidence, the judgment is reversed and the cause remanded. All the judges concur.